# SELECTED RISKS INSURANCE COMPANY

## V.

# WILLIAM MONROE DEAN, ET AL.

Record No. 840244

April 24, 1987

Present: Carrico, C.J., Cochran,* Poff, Compton, Stephenson, Russell, and Thomas, JJ.

---

\* Justice Cochran participated in the hearing and decision of this case prior to the effective date of his retirement on April 20, 1987.

*Henry M. Massie, Jr. (Sands, Anderson, Marks & Miller*, on briefs), for appellant.

*James B. Thorsen (Robert P. Geary; Geary & Davenport*, on brief), for appellees.

COMPTON, J., delivered the opinion of the Court.

In Virginia, the settled rule is that "a judgment of conviction or acquittal in a criminal prosecution does not establish in a subsequent civil action the truth of the facts on which it was rendered" and "such judgment of conviction or acquittal is not admissible in evidence" in the civil case. *Smith* v. *New Dixie Lines*, 201 Va. 466, 472, 111 S.E.2d 434, 438 (1959) (citations omitted). "The reason for the rule is that the parties in a criminal proceeding are not the same as those in a civil proceeding and there is a consequent lack of mutuality." *Id.* In this dispute about insurance coverage, the insurer asks us not to apply the foregoing rule and to

create an "exception" for the particular facts of this case. We deny this request.

On February 7, 1981, appellee William Monroe Dean injured appellee Annette Berry when he drove his truck into her while she was standing on a sidewalk in the City of Richmond. As a result, Dean was charged criminally under the maiming statute, Code § 18.2-51, and was sued civilly by Berry. In the civil suit, Berry sought recovery of damages, alleging Dean was guilty of careless, reckless, and negligent conduct which caused her injuries.

Subsequently, Dean was convicted in a bench trial of unlawful wounding upon a plea of not guilty. Intent is a necessary element of that offense. *Banovitch* v. *Commonwealth*, 196 Va. 210, 216, 83 S.E.2d 369, 373 (1954). The criminal judgment became final in January 1982.

In September 1982, appellant Selected Risks Insurance Company filed the present proceeding naming Dean and Berry as defendants. In a motion for declaratory judgment, the insurer asserted that on the day of the incident Dean was the named insured in a policy of motor vehicle liability insurance issued by the company. The insurer contended that Dean had intentionally struck Berry and that its policy contract excluded intentional acts from the liability coverage. The insurer asked the trial court to declare the rights of the parties under the policy and to rule that Dean was not entitled to coverage for the claims made against him by Berry as a result of the incident in question.

Subsequently, the insurer moved for summary judgment, asserting, under the doctrine of collateral estoppel, that the criminal conviction was conclusive evidence that Dean had intentionally injured Berry. Alternatively, the insurer moved that the conviction be admitted at the trial either as prima facie evidence or as some evidence on the question of intention. These motions were denied.

The case was tried before a jury and no reference to the criminal proceeding was permitted by the trial court. The jury found that Dean did not intentionally strike Berry. The court entered judgment on the verdict and declared that Dean was covered under the policy with respect to Berry's claims against him. We awarded the insurer an appeal from the November 1983 judgment.

On appeal, the insurer contends "that based upon the full criminal trial and subsequent conviction" of Dean, its insurance contract "clearly provided no coverage" for Dean. Thus, the insurer

argues, the trial court should have "judicially relieved" it in this declaratory judgment proceeding from the duty of providing a defense in the damage suit and of paying any sums awarded Berry against Dean.

The insurer points out that the finding of intent was specifically disputed by Dean in the criminal trial and notes there is no dispute in this case that "this specific criminal intent is the same intent involved in a civil insurance setting." In addition, the insurer observes that the evidence at the two trials was substantially the same and that the same eyewitnesses to the incident testified at both hearings. The primary differences between the two proceedings, the insurer argues, were its involvement in the declaratory judgment trial and the fact the jury in the present proceeding reached a different result from that of the judge in the criminal trial.

Relying on *Eagle, Star and British Dominions Ins. Co. v. Heller*, 149 Va. 82, 140 S.E. 314 (1927), the insurer notes that this Court "early-on carved out an exception" to the foregoing general rule and insists that a further exception is justified here where Dean has been "convicted of a serious criminal offense in a full and fair trial before an impartial and equivalent trier of fact which necessarily determined the 'intent' issue beyond a reasonable doubt." Citing cases from other jurisdictions, the insurer urges that no "logical reason suggests itself for requiring another submission of the same facts to another trier of fact . . . in the same Court employing a lesser standard of proof." This argument would have merit if it were not contrary to the established law of the Commonwealth.

For at least 118 years, this Court, in dealing with the preclusive effect of a criminal judgment upon a subsequent civil action arising from the same transaction, has recognized that the criminal charge and the civil action, "though founded on the same fact, are distinct remedies, prosecuted by different parties and for different purposes," and that there is a "want of mutuality." *Honaker v. Howe*, 60 Va. (19 Gratt.) 50, 51, 56 (1869). The reasons for the rule "that a judgment rendered in a criminal prosecution, whether of conviction or acquittal, does not establish in a subsequent civil action the truth of the facts on which it is rendered," *Aetna v. Czoka*, 200 Va. 385, 388, 105 S.E.2d 869, 872 (1958), have also been articulated as follows: "(1) The parties are different in a criminal proceeding from those in a civil action; (2)

the objects of the two proceedings are different; (3) the results and procedures of the two trials are different; and (4) there is a lack of mutuality." *Id.* at 389, 105 S.E.2d at 872.

■ In urging us to create an exception in this case, the insurer does not focus on the entire rule relating to criminal-civil preclusion. Instead, the insurer limits the discussion to an attack on the mutuality requirement within the doctrine of collateral estoppel.

According to that doctrine, the parties and their privies in a first action are precluded from litigating in a subsequent action any factual issue "actually litigated and essential to a valid and final personal judgment in the first action." *Bates* v. *Devers*, 214 Va. 667, 671, 202 S.E.2d 917, 921 (1974). The principle of mutuality limits the influence of the initial adjudication "by requiring that to be effective the estoppel of the judgment must be mutual." *Norfolk and Western Ry. Co.* v. *Bailey*, 221 Va. 638, 640, 272 S.E.2d 217, 218 (1980). Thus, "a litigant is generally prevented from invoking the preclusive force of a judgment unless he would have been bound had the prior litigation of the issue reached the opposite result." *Id.* As recently as 1980, this Court made a considered, unanimous decision to resist the so-called "modern trend" and not to abrogate the mutuality requirement. *Id.* at 641, 272 S.E.2d at 219. Since that decision, other courts, including the Supreme Court of the United States in *Haring* v. *Prosise*, 462 U.S. 306, 317 n. 10 (1983), have been guided by our position on this subject.

Nevertheless, the insurer argues the doctrine of mutuality should not be enforced in this case, correctly acknowledging that mutuality does not exist. Of course, had Dean been acquitted in the criminal trial, the insurer would not have been precluded from claiming Dean committed an intentional act. The acquittal merely would evidence that the trier of fact was unable to find guilt beyond a reasonable doubt, but would leave open the question whether, by a preponderance of the evidence, Dean acted intentionally. The insurer says that a decision not to impose the mutuality requirement here, and ostensibly in other like cases, "would avoid wasteful relitigation of judicially determined identical issues with the prospect of inconsistent findings on the same facts in the same court as occurred in this case."

■ Even if the insurer had mounted an attack on every reason underpinning the criminal-civil preclusion rule, which it has not,

we would not be persuaded to disregard the mutuality element of that rule to accommodate the facts of this case. The urge to promote judicial economy by permitting criminal judgments to preclude determination of issues in civil cases should not override the obligation of the courts to maintain the opportunity for litigants to have their civil rights adjudicated in a forum suited for that purpose.

■ In Virginia, the doctrine of stare decisis is more than a mere cliche. That doctrine plays a significant role in the orderly administration of justice by assuring consistent, predictable, and balanced application of legal principles. And when a court of last resort has established a precedent, after full deliberation upon the issue by the court, the precedent will not be treated lightly or ignored, in the absence of flagrant error or mistake. *Kelly* v. *Trehy*, 133 Va. 160, 169, 112 S.E. 757, 760 (1922). We perceive no error, flagrant or otherwise, or mistake committed by the Court in 1980 in *Bailey* when we declined to follow a "trend" and abrogate the requirement of mutuality. Thus, we will follow our established precedent.

■ The insurer's reliance on *Heller* is misplaced. In that case, the Court refused to apply the general rule. The Court held that proof of a conviction of arson was admissible in evidence as a bar to a civil action. There, the arsonist sought to recover on a fire insurance policy covering the same property which he had been convicted of willfully burning with intent to defraud the insurer. The Court applied a logical exception to the general rule in that case where the arsonist sought to recover damages for his own wrong. Such is not the situation here and there is no compelling reason to create an exception under the facts of this case.

Therefore, we hold the trial court correctly decided the criminal conviction was not conclusive evidence that Dean intentionally injured Berry. From that ruling, it necessarily follows the trial court likewise correctly excluded the conviction both as prima facie evidence and as some evidence on the question of intention.*

---

* See Code § 8.01-418 dealing with the manner of proof, in a civil action, of a guilty plea, of a plea of nolo contendere, and of a forfeiture in a criminal proceeding. Enacted in 1970, this statute deals with the evidentiary question of admissions and apparently was enacted to change the rule enunciated in *Fulcher* v. *Whitlow*, 208 Va. 34, 41, 155 S.E.2d 362, 368 (1967). Acts 1970, ch. 354.

Consequently, the judgment of the trial court will be

*Affirmed.*

POFF, J., dissenting.

I dissent from the majority's holding. That is not to say that I advocate abandonment of the mutuality requirement of the collateral-estoppel doctrine. Rather, I believe that the requirement should be applied selectively and never ritualistically and that its application here is ill justified.

The mutuality question arises in two distinct procedural situations: (1) where a plea of collateral estoppel is raised by a party who was a litigant in a prior action against a party who was a stranger to the prior action, and (2) where the plea is raised by a party who was a stranger to a prior action against a party who was a litigant in that action. In the first situation, the mutuality requirement· should always be applied for the reason that the stranger should not be deprived of his property without due process of law. The latter situation poses no such constitutional concern; although a person is entitled to his day in court on a particular issue, he is not entitled to a day in court against a particular adversary.

I would hold that when a party has fully and fairly litigated an issue of fact essential to a valid judgment and a judgment against him has become final, he is estopped to relitigate that issue in a subsequent action. Such a rule, I believe, has special validity when, as here, the successful party in the prior action was required to bear a heavier burden of proof than that required in the later action. And, if courts are to honor the ancient maxim that a valid final judgment is a verity and immune from collateral attack, then the doctrine of collateral estoppel, once invoked, must be applied, even if the party who invokes it was a stranger to the prior action.

The majority suggests that the application of the doctrine in this case would offend the doctrine of *stare decisis*. I find what seems to me to be compelling precedent in a decision of this Court rendered more than half a century ago. In *Eagle, Etc., Ins. Co.* v. *Heller*, 149 Va. 82, 140 S.E. 314 (1927), Heller, a man convicted of the crime of willfully burning his own stock of goods, brought a civil suit against his insurer to recover the value of the goods. The

insurer filed a plea of estoppel. The trial court rejected the plea and entered judgment for Heller. On appeal, this Court considered the mutuality requirement on which Heller relied but concluded that "a rigid adherence to a general rule . . . would be a reproach to the administration of justice." *Id.* at 85, 140 S.E. at 315. We reversed the judgment and entered final judgment for the insurer on the ground that "the precise finding of fact, that the accused was criminally responsible for the fire . . . is conclusive upon the plaintiff, Heller". *Id.* at 111-12, 140 S.E. at 323.

In every significant particular, *Heller* is indistinguishable from this case. In *Heller*, the issue of fact adjudicated in the criminal prosecution was intent to burn; here, it was intent to wound. In both cases, proof of criminal intent was essential to a valid judgment of conviction. And, in both cases, the plea of estoppel to relitigate the issue of criminal intent was invoked in a civil action by a party who was a stranger to the criminal action.

The majority attempts to distinguish *Heller* on the ground that "the arsonist sought to recover damages for his own wrong" and "[s]uch is not the situation here". Although it is true that the convict in this case, unlike the convict in *Heller*, is not seeking to recover damages, he stands to gain substantial benefits when Berry's personal injury claim goes to trial, because the effect of the majority's decision is to require his insurer to defend the action and, within the limits of coverage in his insurance policy, to pay any damages assessed against him.

Finally, the majority observes that "had Dean been acquitted in the criminal trial, the insurer would not have been precluded from claiming Dean committed an intentional act." Therefore, the majority reasons, "mutuality does not exist" and the doctrine of collateral estoppel should not apply in this case. The *Heller* court rejected such reasoning. *Id.* at 88-90, 140 S.E. at 316.

I would reaffirm the principles applied in *Heller*, reverse the judgment below, and enter final judgment declaring that Dean is estopped to deny that his tort was intentional and, hence, that he is not entitled to insurance coverage for the claim Berry has against him.

RUSSELL and THOMAS, JJ., join in dissent.

THOMAS, J., dissenting.

The majority opinion is a fairly dramatic example of the way in which the mechanistic, unanalytical application of general legal principles can lead to absurd results. For, based on the majority opinion, a man who had been criminally convicted of unlawful wounding by intentionally driving his truck over a curb and crushing a woman against a brick wall, is said to have insurance coverage in a negligence suit brought by the victim of his crime even though his insurance contract excludes coverage for intentional acts. This aberrant result has occurred because the majority has decided that the criminal conviction must be completely ignored in a suit brought by the insurance company to determine its contractual responsibility to the insured convict.

The majority has painted itself into a corner for several reasons. First, it does not focus upon the narrow issue actually raised by the facts of this case. Second, it does not completely develop the facts. Third, it concludes that the result it reaches is required by a 118-year history of decisions, yet it fails to look closely at those decisions. Fourth, it suggests that the issue raised in the instant appeal was considered and rejected in a 1980 unanimous opinion of this Court. Fifth, it relies on the rule of mutuality of estoppel without any discussion of the rationale for that rule. And sixth, it invokes *stare decisis* thereby attempting to justify the failure of logic that pervades the majority opinion.

In my view, the correct issue is as follows: Whether a person who is convicted of a crime for which intent was an essential element can prevent proof of that conviction in a subsequent civil suit against the same individual, based on the same facts where intent is an essential element of the civil dispute. Put another way, can a convict successfully demand that the question of his intent to do a certain act be tried twice: first, in a criminal suit where intent is proved beyond a reasonable doubt and again in a civil suit where the requirement of proof is only by a preponderance of the evidence.

There were two trials in this case. The first was the criminal trial in which William Monroe Dean was convicted of unlawfully wounding Annette Berry. Considering the evidence adduced in the criminal trial in the light most favorable to the Commonwealth, we conclude that the facts are as follows: On February 7, 1981, Annette Berry emerged from a local night spot located in the Oregon Hill section of Richmond at about 2:00 a.m. She heard a woman "screaming" and "hollering." She thought she recognized the

voice and proceeded to investigate. Berry discovered Dean arguing with an elderly woman known to Berry as "Miss Doris." Berry, who was afraid the elderly woman would have a heart attack, intervened in the conversation. She told Dean to leave the woman alone, shoved Dean, and yelled at Dean to leave. A crowd of four to six people gathered. Dean walked to his truck, got in and started the engine.

Dean "revved up" the engine and caused his tires to squeal on the pavement. He backed up a little then drove forward over the curb onto the sidewalk on which Berry was standing with her back to Dean's truck. Dean ran directly into Berry pinning her against a brick wall that stood about knee high. Berry was rendered unconscious by the blow. Dean backed up, revved up his engine again, again caused his tires to squeal, and drove forward another time. Some of Berry's friends dragged her out of the way before Dean could strike her a second time. Dean backed up and drove away.

On April 27, 1981, based on the foregoing facts, Dean was convicted of unlawful wounding. Code § 18.2-51. That code section provided in pertinent part as follows:

> If any person maliciously . . . wound any person or by any means cause him bodily injury, with the *intent* to maim, disfigure, disable, or kill, he shall . . . be guilty of a Class 3 felony. If such Act be done *unlawfully* but not maliciously, *with the intent aforesaid*, the offender shall be guilty of a Class 6 felony.

(Emphasis added.) Intent was clearly a necessary element of the crime for which Dean was convicted. On January 29, 1982, this Court denied Dean's appeal.

Prior to Dean's conviction on April 27, 1981, Berry filed a negligence suit against Dean. In her suit, Berry contended that Dean "did carelessly, recklessly and negligently operate an automobile so as to cause it to come into collision with the plaintiff, Annette Berry, a pedestrian, walking on the sidewalk."

On September 27, 1982, Selected Risks Insurance Company (Selected Risks), Dean's insurer, filed a motion for declaratory judgment against both Dean and Berry. Selected Risks contended that Dean's conduct in causing injury to Berry was excluded under the policy. Consequently, according to Selected Risks, it

owed no coverage to Dean and was not liable to defend Dean in Berry's suit or to respond in damages on Dean's behalf.

The liability portion of the policy excluded intentional acts. It provided as follows:

"*Exclusions*. This policy does not apply under Part 1:

. . . .

(b) to bodily injury or property damage caused intentionally by or at the direction of the insured.

On November 11, 1983, at the trial of the declaratory judgment action, Selected Risks was precluded from making any reference whatever to Dean's prior criminal conviction for unlawfully wounding Berry. All the witnesses who testified in the declaratory judgment trial had previously testified in the criminal trial. Berry's testimony from the criminal trial was read into evidence in Selected Risks' case with references to the criminal proceeding deleted. The testimony of another witness was also received in the same manner. The police officer who arrested Dean did not testify in the second trial. The question submitted to the jury on the verdict form was this: "Did William Monroe Dean intentionally hit Annette Berry with his truck on February 7, 1981?" The jury answered that question, "No."

I disagree with the majority's suggestion that 118 years of Virginia decisions support the result reached in this case. The majority relies upon *Honaker* v. *Howe*, 60 Va. (19 Gratt.) 50 (1869), *Aetna* v. *Czoka*, 200 Va. 385, 105 S.E.2d 869 (1958), and Smith v. *New Dixie Lines*, 201 Va. 466, 111 S.E.2d 434 (1959), in making its historical assertion. However, those cases are distinguishable.

The issue in *Honaker* was whether a plea of *nolo contendere* in a criminal suit was admissible in a subsequent civil suit to prove that the defendant confessed to the facts that were the basis of the criminal charge. There, we distinguished between a direct and express confession which, significantly, we said would be admissible and a plea of *nolo contendere* which we described as an implied confession. We said that with regard to an implied confession, the defendant neither pled guilty nor confessed the truth of the indictment. "The effect of such an implied confession is not the same as that of a direct and express confession by the plea of guilty." 60 Va. (19 Gratt.) at 52. The reason we would not permit the use of

the *nolo contendere* plea in a subsequent civil case is because, by the nature of the plea, it was limited in operation to the particular proceeding in which it was made. We reasoned that the person pleading *nolo contendere* "agrees that the court may consider him guilty for the purpose of imposing a fine upon him, *but the agreement goes no further.*" *Id.* at 53 (emphasis added). It was for these reasons that this Court reversed the judgment in which the trial court had admitted the implied confession.

*Honaker* did not turn on a consideration of mutuality. We simply noted at the outside "that the judgment upon an indictment for an assault, cannot by reason of want of mutuality, be given in evidence in a civil action for the same assault, to establish as *res judicata*, the fact on which it was founded." *Id.* at 51. However, we quickly explained that that principle was not involved in the case. Consequently, we made no analysis of it and our reference to mutuality was not necessary to the decision.

Further, the majority quotes, out of context, certain language from *Honaker* that concerned a question different from the one under consideration in this appeal. We rejected an alternative argument that the plea of *nolo contendere* was admissible in the civil suit on the question of damages. Our full discussion was as follows:

It has been suggested that the plaintiff may have introduced the evidence in question with a view to enhance the damages, by showing that the defendant had got off with only a nominal fine in the criminal proceeding. But the evidence was not admissible for that purpose. The indictment and the action, *though founded on the same fact, are distinct remedies, prosecuted by different parties and for different purposes.* On this ground it has been often held, that the defendant in an action for assault and battery, cannot prove that he has been already punished criminally for the same act, for the purpose of mitigating the damages.

*Id.* at 56 (emphasis added). The italicized language was quoted by the majority. However, as is plain from the foregoing quotation, in *Honaker*, we were not discussing the issue that confronts us here.

*Aetna* v. *Czoka*, 200 Va. 385, 105 S.E.2d 869 (1958), is also distinguishable. The problem with *Czoka* is that the entire discussion of whether a criminal conviction could be proved in a subse-

quent civil trial was *obiter dictum*. This is so because in *Czoka*, the appellant advanced two independent grounds for reversal. The first was that the trial court should have admitted into evidence a certain guilty plea and conviction for the unauthorized use of a truck. The insurance company contended that if the truck was not being used with permission then the insurance company owed no coverage. We rejected this argument saying that the trial court could properly exclude the guilty plea and conviction. Next, we considered the separate issue whether, as a matter of law, permission had *not* been given to use the truck. We concluded that the requisite permission had *not* been given. Consequently, we reversed and entered final judgment. Only in the case of a remand would it have been necessary for us to discuss the first issue. Given our disposition of *Czoka*, our discussion there of the use of a criminal conviction in a subsequent civil proceeding was unnecessary to the decision and it cannot bind the Court in a case, such as the one under review, where the issue is essential to disposition.

*Smith* v. *New Dixie Lines*, 201 Va. 466, 111 S.E.2d 434 (1959), can be distinguished for at least two reasons. Smith sued New Dixie Lines and one of its drivers for personal injuries he sustained in a collision between the car in which Smith was riding as a passenger and a New Dixie truck. The trial court admitted evidence, offered by New Dixie, that the driver of Smith's car had been convicted of reckless driving. On appeal, we reversed and remanded. We held that the conviction was not admissible.

However, *Smith* did not concern a suit *against* a person who had received a previous criminal conviction based on the same facts and with regard to the same issue raised in the civil suit. New Dixie sought to introduce the conviction of a person who was not a party to Smith's suit. Moreover, as a matter of reason, the fact that the driver of Smith's car was convicted of reckless driving does not mean that the trucking company and its driver could not be liable in tort to Smith. In short, no conflict existed between the prior criminal conviction and the subsequent civil suit. *Smith* then, like the other cases, did not address the present problem.

Both the trial court and the majority were of the view that *Norfolk and Western Ry. Co.* v. *Bailey*, 221 Va. 638, 272 S.E.2d 217 (1980), is controlling. However, *Bailey* is distinguishable. The issue presented by the instant appeal was not touched upon in *Bailey*. *Bailey* did not involve the use of a prior criminal conviction in a subsequent civil proceeding. *Bailey* concerned a series of civil

suits arising out of a collision between a locomotive and a gasoline tanker truck. There, we stated the issue as follows: "Res judicata is the focus of this appeal. Specifically, we consider whether, *under the circumstances of this case*, the doctrine of mutuality should be renounced as applied to a plea of collateral estoppel." *Id.* at 639, 272 S.E.2d at 218 (emphasis added). The italicized language makes clear that *Bailey* cannot control a case where the circumstances are as different as they are in the instant appeal. The conclusion reached in *Bailey* also demonstrates the inapplicability of that decision to the present problem. We wrote as follows: "We . . . have concluded not to abandon the mutuality requirement when, as here, offensive use of collateral estoppel is sought to be invoked in *one of a series of damage suits arising from a common disaster.*" *Id.* at 642, 272 S.E.2d at 220 (emphasis added). In my view, *Bailey* does not mandate the result reached by the majority.

The majority, relying on *Czoka*, states that there are four factors that support the exclusion of a prior criminal conviction in a subsequent civil suit. The majority suggests that even if its concern about mutuality were resolved, the trial court's opinion would have to be affirmed because of the additional factors. The majority's position in this regard is not well taken because the sole basis for the trial court's ruling was the lack of mutuality. The trial court wrote as follows in a letter opinion which was incorporated into the pertinent order in the case:

> I have reviewed the memoranda of law which you have submitted to me and it is my opinion that I have no choice under the law except to dismiss the motion for summary judgment.
>
> It is my opinion that there is no mutuality between the parties in the criminal case and in the civil case, and the case of *Norfolk & Western* v. *Bailey*, 221 Va. 638, definitely reaffirmed our Virginia doctrine of mutuality.

Thus, the proper focus of this appeal is upon the doctrine of mutuality.

Since the mutuality doctrine is the foundation upon which the majority builds its decision, it is fair to ask what purposes are served by that doctrine. The majority opinion says very little on this score. At one point, it states that "mutuality limits the influ-

ence of the initial adjudication 'by requiring that to be effective the estoppel of the judgment must be mutual.' " *Ante* at 264 (quoting *Norfolk and Western Ry. Co.* v. *Bailey*, 221 Va. 638, 640, 272 S.E.2d 217, 218 (1980)). At another point, the majority explains that the doctrine supports "the obligation of the courts to maintain the opportunity for litigants to have their civil rights adjudicated in a forum suited for that purpose." *Ante* at 265. The first rationale boils down to the proposition that mutuality is good because it makes things mutual. The second rationale embodies the cynical notion that the criminal courts in Virginia, charged as they are with deciding matters of life or death in cases where the proof requirement is beyond a reasonable doubt, cannot be trusted to make a correct determination of a basic factual issue such as intent.

The reason most often cited in support of the mutuality requirement is the maxim, *"res inter alios acta alteri nocere non debt —* a transaction between two parties ought not to operate to the disadvantage of a third. The thought is, of course, that everyone is entitled to his day in court." Note, *Admissibility and Weight of A Criminal Conviction In a Subsequent Civil Action*, 39 Va. L. Rev. 995, 997 (1953). But if this is the purpose of the mutuality requirement, that purpose will not be undermined by permitting the use of Dean's conviction in the instant declaratory judgment action. For one thing, Selected Risks, the third party, will not be prejudiced by the use of Dean's conviction. Selected Risks will benefit from that use. Dean cannot complain on Selected Risks' behalf. Nor can Berry complain; her rights against Selected Risks rise no higher than Dean's. Berry has no direct independent right to demand coverage from Dean's insurance carrier. This does not mean, however, that Berry cannot proceed with her civil suit against Dean. She is free to do so. She will not lose her day in court. She simply will not be permitted to proceed against Selected Risks.

In *Bates* v. *Devers*, 214 Va. 667, 202 S.E.2d 917 (1974), we discussed, in a footnote, the rationale for the mutuality requirement and suggested that the requirement was not appropriate in every case.

The policy underlying mutuality is to insure a litigant that he will have a full and fair day in court on any issue essential to an action in which he is a party. But, as is the case with any

other judicial doctrine grounded in public policy, the mutuality doctrine should not be mechanistically applied when it is *compellingly clear* from the prior record that the party in the subsequent civil action against whom collateral estoppel is asserted has fully and fairly litigated and lost an issue of fact which was essential to the prior judgment.

*Id.* at 671 n.7, 202 S.E.2d at 921 n.7 (emphasis in original). The present case is one in which it is *compellingly clear* that Dean fully and fairly litigated the issue of his intent in striking Berry.

The statement of the mutuality requirement on the facts of this case runs as follows: because Dean's acquittal on a charge of unlawful wounding would not bind Selected Risks in its effort to establish that Dean intentionally struck Berry in a situation where Dean is convicted of those charges, Selected Risks cannot rely on the conviction to establish that Dean intentionally struck Berry. The situation of conviction versus acquittal is not mutual. An acquittal means only that the Commonwealth failed to establish beyond a reasonable doubt that Dean unlawfully wounded Berry. Yet, when Selected Risks attempts to prove intentional acts by Dean, its level of proof is by a preponderance of the evidence. Consequently, Selected Risks could present the same case that the Commonwealth presented and prevail even though the Commonwealth, in a criminal trial using the same evidence, lost.

On the other hand, convicting Dean is quite a different story. The penal statutes are construed against the Commonwealth and in his favor, he does not have to testify, and the Commonwealth must prove its case against him beyond a reasonable doubt. In a criminal setting, Dean is in a most favored position.

When it was established, in the criminal case, that Dean intended to hit Berry with his truck, that particular issue should not be subject to relitigation in a civil trial because, if the justice system is operating properly, the civil trier of fact who heard the same evidence would have to come to the same conclusion because the proof requirement is less on the civil side. Thus, under the circumstances of this case, allowing relitigation of the intent issue in a civil forum undermines the dignity of the criminal courts. It amounts to a reproach to the justice system. It permits a civil jury to rule that a criminal jury was wrong in its fact finding. Further, the relitigation that occurred here wastes judicial resources and impairs public confidence in the authority of the courts.

*Stare decisis* does not stand in our way in this case. That doctrine was never meant to supplant logic and reason. It was never meant to prevent a careful evolution of the law. *Stare decisis*, pushed to extremes, would mean the law, once stated by the courts, could never be changed by the courts.

In reality, this is a case of first impression for the Commonwealth. For the reasons stated above, I would reverse the decision of the trial court and enter final judgment here.