928 F.2d 399
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Roman A. GROCHOWSKI, Plaintiff-Appellant,
v.
T.S. DEWITT-RICKARDS, Defendant-Appellee,
and
Commonwealth of Virginia, Defendant.
 No. 90-2159.
 United States Court of Appeals, Fourth Circuit.
 Submitted Feb. 13, 1991.
Decided March 13, 1991.
 
 Appeal from the United States District Court for the Western District of Virginia, at Charlottesville. James H. Michael, Jr., District Judge. (CA-89-34-C)
 J. Benjamin Dick, Charlottesville, Va., for appellant.
 Dayna Bowen Matthew, Mcguire, Woods, Battle & Boothe, Charlottesville, Va., for appellees.
 W.D. Va., 741 F.Supp. 1230.
 AFFIRMED.
 Before MURNAGHAN, SPROUSE and CHAPMAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Roman A. Grochowski was stopped by defendant Thomas S. DewittRickards, a police officer, for probable cause to believe he was driving under the influence of alcohol. After administering a series of field sobriety tests, officer Rickards transported him to a police station where an alcohol breathalyzer test was given. The results of the test indicated that Grochowski was legally intoxicated. He was then charged and taken into custody.
 
 
 2
 Grochowski was convicted of driving under the influence of alcohol in the General District Court for the City of Charlottesville. He then appealed to the Circuit Court for the City of Charlottesville and received a trial de novo. Prior to that trial, Grochowski moved to suppress the results of the breathalyzer test on the grounds that it was tainted and forcibly coerced and that he was denied his right under Virginia law to refuse the test. Upon review of the testimony given in the general district court trial, the circuit court judge denied the motion, concluding as a matter of law that Grochowski had not refused to take the test. After a trial on the merits of the drunk driving charge, Grochowski was convicted in the circuit court.
 
 
 3
 Grochowski filed the instant claim in the United States district court. The complaint, brought under 42 U.S.C. Sec. 1983, alleges violations of Grochowski's fourth, fifth, and fourteenth amendment rights. The district court held that the state criminal conviction necessarily decided the issue of whether the test was validly administered and voluntary. It concluded, therefore, that Grochowski was collaterally estopped from relitigating that issue in the federal Sec. 1983 action. Since the issue of the voluntariness of the breathalyzer was essential to the federal claim and since the state court decided the issue unfavorably to Grochowski, the district court granted defendant's motion for summary judgment.
 
 
 4
 We do not agree that the doctrine of collateral estoppel bars Grochowski's claims from going forward. However, because the evidence in the record supports summary judgment for the defendant on the merits of Grochowski's claims, the decision of the district court is affirmed.
 
 
 5
 The doctrine of collateral estoppel precludes parties and their privies in a first action from relitigating any factual issue actually litigated and essential to that judgment in a second, subsequent action. Selected Risks Ins. Co. v. Dean, 233 Va. 260, 264, 355 S.E.2d 579, 581 (1987). According to the mandate of 28 U.S.C. Sec. 1738, federal courts are required to "give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." Haring v. Prosise, 462 U.S. 306, 313 (1983), quoting Allen v. McCurry, 449 U.S. 90, 96 (1980).
 
 
 6
 There is no implicit exception in Sec. 1983 to the applicability of collateral estoppel to bar relitigation in federal court of issues finally adjudicated in a state criminal conviction. See Haring, supra. However, there is also no exception inherent in Sec. 1983 to the mandate of Sec. 1738, requiring the use of state collateral estoppel rules.
 
 
 7
 In Haring v. Prosise, the Supreme Court interpreted Virginia law as giving preclusive effect to a state court conviction only if the constitutional issue was actually litigated and necessarily determined in the state proceeding. Haring, 462 U.S. at 315. It does not necessarily follow, however, that, merely because the issue was litigated, collateral estoppel would necessarily apply. In fact, the Supreme Court has expressly refrained from commenting on the scope of collateral estoppel in a Sec. 1983 action when issues were litigated and decided at a criminal trial. Id. at 311 n. 2; see also Allen v. McCurry, 449 U.S. at 93 n. 2.
 
 
 8
 Virginia courts have long required mutuality of parties in the application of collateral estoppel. See Norfolk & Western Ry. Co. v. Bailey Lumber Co., 221 Va. 638, 640, 272 S.E.2d 217, 218 (1980). That doctrine requires that the estoppel of the judgment must be mutual; that is, "a litigant is generally prevented from invoking the preclusive force of a judgment unless he would have been bound had the prior litigation of the issue reached the opposite result." Id. It is clear that, although the modern trend is toward abrogation of the mutuality requirement, Virginia courts have held steadfast to the doctrine.
 
 
 9
 For at least 118 years, [the Supreme Court of Virginia], in dealing with the preclusive effect of a criminal judgment upon a subsequent civil action arising from the same transaction, has recognized that the criminal charge and the civil action, "though founded on the same facts, are distinct remedies, prosecuted by different parties and for different purposes," and that there is a "want of mutuality." ... The reasons for the rule "that a judgment rendered in a criminal prosecution, whether of conviction or acquittal, does not establish in a subsequent civil action the truth of the facts on which it is rendered," ... have also been articulated as follows:
 
 
 10
 "(1) The parties are different in a criminal proceeding from those in a civil action; (2) the objects of the two proceedings are different; (3) the results and procedures of the two trials are different; and (4) there is a lack of mutuality." ...
 
 
 11
 Selected Risks, 233 Va. at 263-64, 355 S.E.2d at 580-81 (citations omitted).
 
 
 12
 Because the Virginia courts have held on to the requirement of mutuality, and since they have declined to find mutuality existing between criminal and civil suits, the district court improperly applied the doctrine of collateral estoppel to this case.
 
 
 13
 Although collateral estoppel does not bar Grochowski's suit, the record before the district court sufficiently establishes that Dewitt-Rickards is entitled to summary judgment on the merits of Grochowski's claims. In reaching this conclusion, we have, as we must, resolved all factual disputes in Grochowski's favor. See Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir.1980).
 
 
 14
 The Supreme Court, while upholding the reasonable use of tests to determine blood-alcohol content against fourth and fifth amendment claims, has left open the question of redress for constitutional claims involving the use of such tests accompanied by police-initiated force or violence, or administered with disregard for reasonable refusals to submit to the tests. See Schmerber v. California, 384 U.S. 757, 760 n. 4, 768 (1966); South Dakota v. Neville, 459 U.S. 553, 559 n. 9 (1983). Although the Court did not discuss the nature of the allegations necessary to support such a claim, it is clear in this case that Dewitt-Rickards' conduct during the administration of the breathalyzer test, as described in Grochowski's testimony in state court, does not present the factual scenario needed to support such a constitutional claim. The minor force used by Officer Rickards may, perhaps, "offend some fastidious squeamishness or private sentimentalism about combatting crime too energetically." Rochin v. California, 342 U.S. 165, 172 (1952). However, it is not conduct that "shocks the conscience," nor were the methods used "too close to the rack and screw." Id.[1] The conduct addressed in Rochin involved the forcible extraction of evidence from the plaintiff's stomach. The Court held that such conduct did violate due process. However, the standard it established requires more than minor discomfort on the part of the complaining party.
 
 
 15
 To the extent that Grochowski's claim is based on DewittRickards' alleged disregard of his request for a blood test instead of a breath test, we note that Grochowski testified that his request for the blood test came after he had elected the breathalyzer and was at the police station ready for the testing to begin. Although the police may be required to respect reasonable requests to undergo some other form of testing, Schmerber, 459 U.S. at 559 n. 9, the request made in this case came too late. Had the officer decided to comply with Grochowski's request at that point, it would have meant transporting him to the hospital and allowing time to elapse which would, it would seem, influence the outcome of the blood test. See Schmerber, 384 U.S. at 770-71. Furthermore, the request was made only after the machine had been set up and the test was already in progress. A refusal under these circumstances is not reasonable.
 
 
 16
 As for the force complained of, Grochowski testified that he was held in a chair by three police officers, while handcuffed, and that the lid to the testing device came down upon his head twice. He further complains that the officers taunted him by chanting "blow, blow, blow" while the test was being administered.
 
 
 17
 That the lid came down is admitted by both parties. However, there is no evidence tending to show that the lid was purposely dropped on his head. In fact, Grochowski testified that he was willing to cooperate and complete the test until the lid of the machine fell on his head twice as he attempted to perform the test. Thus, it is difficult to conclude that the lid was forced down on his head in an effort to make him submit to the test.
 
 
 18
 Even accepting Grochowski's testimony as true, the force used was not such that it "shocks the conscience." Since Grochowski has not presented evidence on which a jury could reasonably find in his favor, Dewitt-Rickards is entitled to summary judgment on this claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).
 
 
 19
 Similarly, Grochowski's due process claim premised on the failure of Dewitt-Rickards to follow Virginia's statutory procedures dealing with a person's refusal to submit to a breath or blood test is without merit. Grochowski testified in state court that he initially elected to take a breath test. When he first expressed reservations about taking the test, one of the officers present began to explain his right to refuse the test, but Grochowski did not pursue this after being told he could not confer with a lawyer prior to deciding whether to refuse the test. Finally, when he again stated his desire not to submit to the breath test, he stated that he wished to take a blood test, but never voiced a blanket refusal to submit to any test. Since Virginia procedures relating to refusal to submit to a blood or breath test apply only where there has been a refusal to submit to any test, see Va.Code Ann. Sec. 18.2-268, there was no reason for DewittRickards to follow those procedures based on Grochowski's version of the events. Thus, we need not decide the extent to which a liberty interest is created by Virginia's statutory scheme or the procedures necessary to protect that interest to conclude that Grochowski's claim is without merit.
 
 
 20
 For the foregoing reasons, the decision of the district court is affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the material before the Court and argument would not aid in the decisional process.
 
 AFFIRMED
 
 
 [1]
 Nor does Dewitt-Rickards' conduct meet the less stringent standards for finding a substantive due process violation. See Taylor v. Ledbetter, 818 F.2d 791, 795 (11th Cir.1987) (en banc ) (allegations of "gross negligence and deliberate indifference" are sufficient); Archie v. City of Racine, 847 F.2d 1211, 1218-19 (7th Cir.1988) (en banc ) ("reckless" standard), cert. denied, 489 U.S. 1065 (1989)