**PUBLISHED**

Present:    Chief Judge Decker, Judges Beales, Huff, O'Brien, AtLee, Malveaux, Athey, Fulton,
            Ortiz, Causey, Friedman, Chaney, Raphael, Lorish, Callins, White and Frucci
Argued at Richmond, Virginia


TED ANTHONY JENNINGS, JR.

                                                        OPINION BY
v.        Record No. 1407-22-3                   JUDGE LISA M. LORISH
                                                   DECEMBER 3, 2024

COMMONWEALTH OF VIRGINIA


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
F. Patrick Yeats, Judge

Christopher T. Holinger (Davis, Burch & Abrams, on briefs), for
appellant.

Stephen J. Sovinsky, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


In 2011, Ted Anthony Jennings, Jr. was adjudicated delinquent for an offense that would

have been a felony had it been committed by an adult. In 2021, Jennings was convicted of

unlawfully possessing a firearm under Code § 18.2-308.2(A), often referred to as the "felon in

possession" statute. Following the rule established in *Carter v. Commonwealth*, 38 Va. App. 116

(2002), the circuit court imposed the mandatory minimum sentence that the statute requires for

any person "who was previously convicted of any other felony within the prior 10 years." But a

juvenile adjudication is not a felony conviction. Because the plain language of the statute only

applies the mandatory minimum provisions when the defendant has a prior felony conviction, we

agree with Jennings that *Carter* was wrongly decided. Thus, we overrule both *Carter* and the

portion of *Prekker v. Commonwealth*, 66 Va. App. 103 (2016), that applied the holding in *Carter*, and remand this case for Jennings to be resentenced.

In 2011, Ted Anthony Jennings, Jr. was adjudicated delinquent of one felony count of receiving stolen property. Although Jennings committed the offense when he was 17 years old, he was not adjudicated delinquent until he was 19 years old. Just shy of ten years later, Officer Glerum stopped Jennings for using a cellphone while driving. After pulling him over, the officer discovered that Jennings had outstanding misdemeanor warrants. Jennings told the officer that he had a firearm in the car. Jennings was ultimately convicted of carrying a concealed weapon, second offense, under Code § 18.2-308 and unlawfully possessing a firearm under Code § 18.2-308.2(A).

At sentencing, the circuit court concluded that Jennings' prior juvenile adjudication for receipt of stolen property would have been a nonviolent felony if committed as an adult. Thus, applying our binding precedent, the court sentenced him to two active years of incarceration under the mandatory sentencing provision of Code § 18.2-308.2(A) and suspended three more years, giving him a total sentence of five years.

After sentencing, Jennings moved to reconsider the sentence, and the circuit court suspended the execution of the sentencing order pending resolution of the motion. At a hearing on the motion, Jennings acknowledged that *Carter* held that a juvenile adjudication triggered the mandatory sentencing provision in Code § 18.2-308.2(A), but argued that the reasoning in *Carter* was flawed and urged the court not to apply it. The Commonwealth opposed, relying on *Carter*. The circuit court agreed that it was bound by *Carter* but noted that Jennings made a "good argument" and that he "may have an opportunity to argue it again before the Court of Appeals." Because "there's at least a very strong argument with respect to the mandatory minimum sentence argument," the circuit court allowed Jennings to remain on bond pending this appeal.

- 2 -

On appeal, Jennings argued that although the offense he committed as a juvenile would have been a felony had he committed it as an adult, his juvenile adjudication was not a "conviction" for the purposes of the mandatory sentencing provision in Code § 18.2-308.2(A). The Commonwealth countered that *Carter* conclusively decided the matter. A three-judge panel of this Court affirmed the circuit court's judgment, ruling that *Carter* was dispositive because it held that the mandatory sentencing provision of Code § 18.2-308.2(A) "expressly 'includes all persons previously "found guilty," while juveniles, of a "delinquent act," deemed felonious.'" *Jennings v. Commonwealth*, No. 1407-22-3, slip. op. at 3-4 (Va. Ct. App. May 7, 2024) (quoting *Carter*, 38 Va. App. at 125). The opinion concluded by noting that the "interpanel-accord doctrine provides that a decision of a prior panel of this Court '"becomes a predicate for application of the doctrine of stare decisis" and cannot be overruled except by the Court of Appeals sitting en banc or by the Virginia Supreme Court,'" so the panel could not rule on Jennings' argument that *Carter* was wrongly decided. *Id.* at 4 (quoting *Butcher v. Commonwealth*, 298 Va. 392, 397 n.6 (2020)). Two judges wrote separately to concur in the result but suggested that *Carter*'s reasoning was unpersuasive and should be reconsidered en banc. *Id.* at 6-11.

This Court granted en banc review.

ANALYSIS

A. The plain text of Code § 18.2-308.2(A) distinguishes between "convictions" and juvenile "adjudications," and the mandatory minimum sentencing provisions apply only to qualifying convictions.

As is the case for any matter of statutory interpretation, "our primary objective is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." *Morris v. Commonwealth*, 77 Va. App. 510, 517 (2023) (en banc) (quoting *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012)). "[W]e must assume that 'the legislature

chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute.'" *City of Virginia Beach v. ESG Enters., Inc.*, 243 Va. 149, 153 (1992) (quoting *Barr v. Town & Country Props., Inc.*, 240 Va. 292, 295 (1990)).  We must "giv[e] to every word and every part of the statute, if possible, its due effect and meaning." *Epps v. Commonwealth*, 47 Va. App. 687, 714 (2006) (en banc) (quoting *Posey v. Commonwealth*, 123 Va. 551, 553 (1918)).  In so doing, we should interpret a statute's words "if possible, to avoid rendering [other] words superfluous." *Cook v. Commonwealth*, 268 Va. 111, 114 (2004).

To interpret Code § 18.2-308.2(A), we must consider the context "of the entire statute," rather than examine mere excerpts, to fulfill "our duty to interpret the several parts of a statute as a consistent and harmonious whole." *Cuccinelli*, 283 Va. at 425 (quoting *Eberhardt v. Fairfax Cnty. Emps.' Ret. Sys. Bd. of Trs.*, 283 Va. 190, 194-95 (2012)).  Code § 18.2-308.2(A) states:

> It shall be unlawful for (i) any person who has been convicted of a felony; (ii) any person adjudicated delinquent as a juvenile 14 years of age or older at the time of the offense of murder in violation of § 18.2-31 or 18.2-32, kidnapping in violation of § 18.2-47, robbery by the threat or presentation of firearms in violation of § 18.2-58, or rape in violation of § 18.2-61; or (iii) any person under the age of 29 *who was adjudicated delinquent as a juvenile* 14 years of age or older at the time of the offense of a delinquent act which would be a felony if committed by an adult, other than those felonies set forth in clause (ii), whether such *conviction or adjudication* occurred under the laws of the Commonwealth, or any other state, the District of Columbia, the United States or any territory thereof, to knowingly and intentionally possess or transport any firearm or ammunition for a firearm, any stun weapon as defined by § 18.2-308.1 . . . .  Any person who violates this section shall be guilty of a Class 6 felony. However, any person who violates this section by knowingly and intentionally possessing or transporting any firearm and who was *previously convicted of a violent felony* as defined in § 17.1-805 shall be sentenced to a mandatory minimum term of imprisonment of five years.  Any person who violates this section by knowingly and intentionally possessing or transporting any firearm and who

- 4 -

was *previously convicted of any other felony* within the prior 10 years shall be sentenced to a mandatory minimum term of imprisonment of two years.

(Emphases added). The question here is whether the General Assembly intended the phrase "previously convicted" of a felony, as used in the sentencing portion of the statute, to include juvenile adjudications for offenses that would have been felonies if committed by an adult.[1]

The plain language of the statute shows that juvenile adjudications are distinct from felony convictions. As used throughout Code § 18.2-308.2(A), "convictions" and "adjudications" do not mean the same thing. The first sentence of the statute sets out the three groups of individuals who are barred from possessing or transporting "any firearm or ammunition for a firearm, any stun weapon as defined by § 18.2-308.1, or any explosive material." Subpart (i) applies this prohibition to anyone with a prior felony conviction, while subparts (ii) and (iii) apply the prohibition to people with certain prior juvenile adjudications. That sentence finishes by again distinguishing convictions from adjudications—clarifying that "whether such conviction or adjudication occurred under the law of the Commonwealth, or any other state, the District of Columbia, the United States or any territory thereof," either designation would suffice to trigger the prohibition under the statute. Code § 18.2-308.2(A).

The statute's penalty provisions make the same distinction. The baseline penalty for "[a]ny person who violates this section" is a Class 6 felony. This penalty applies to anyone who has a prior conviction or qualifying juvenile adjudication and possessed or transported anything

---

[1] The question of how to interpret Code § 18.2-308.2(A) is squarely before the Court in this case and one our Supreme Court has yet to address. Our partially dissenting colleagues nevertheless suggest that the Supreme Court, in *Preston v. Commonwealth*, 281 Va. 52 (2011), "used a similar statutory interpretation analysis." Given that Preston did "not dispute that he was previously convicted of a non-violent felony," the only question in that case was an evidentiary one: whether there was sufficient evidence that the prior offense qualified as violent or non-violent. *Id.* at 59. A passive reference to an issue not "raised, discussed, or decided" does not "foreclose inquiry" by a later reviewing court. *Jones v. Commonwealth*, 293 Va. 29, 50 (2017) (quoting *Chesapeake Hosp. Auth. v. Commonwealth*, 262 Va. 551, 560 (2001)).

from the list of prohibited items. But then the statute imposes stricter sentencing provisions specific to the possession and transportation of *firearms*, and only for certain members of the first group of individuals who are barred from possessing them—those with "felony convictions." "Any person" with a prior conviction for a "violent felony as defined in § 17.1-805," is subject to a "mandatory minimum term of imprisonment of five years." Code § 18.2-308.2(A). If, on the other hand, the prior conviction was for "any other felony" and occurred "within the prior 10 years," a two-year mandatory minimum term of imprisonment applies. *Id.*

We presume that when the legislature uses two different words in the same statute, here "convictions" and "adjudications," it does so to impart different meanings. *See Sauder v. Ferguson*, 289 Va. 449, 457-58 (2015) ("When the General Assembly uses two different terms in the same act, it is presumed to mean two different things." (quoting *Forst v. Rockingham Poultry Mktg. Coop.*, 222 Va. 270, 278 (1981))). While the General Assembly was clear in the offense conduct section of the statute to include both convictions and qualifying adjudications, the mandatory sentencing provisions do not apply to anyone with a prior "conviction or adjudication." Thus, under the plain language of the statute, those mandatory sentencing provisions apply only if someone has a prior "conviction."

That the General Assembly intended for the mandatory sentencing provisions to apply only to persons with qualifying prior felony convictions is reinforced by the default rule on juvenile adjudications: "[e]xcept as otherwise provided by law," juvenile adjudications do not "impose any of the civil disabilities ordinarily imposed by conviction for a crime." Code § 16.1-308. This is because "juvenile proceedings are corrective in nature rather than penal. . . . The primary function of the juvenile courts properly considered is not conviction or punishment for crime; but crime prevention and juvenile rehabilitation." *Kiracofe v. Commonwealth*, 198

Va. 833, 844 (1957). The default rule in Code § 16.1-308 applies to all other statutes unless they specify that a different rule applies. Not only does Code § 18.2-308.2(A) lack any statement that the General Assembly intended to override the default rule and equate juvenile adjudications with adult felony convictions, but the text of the statute also carefully distinguishes between the two.

Despite these sharp distinctions, the Commonwealth argues both that the language is unambiguous and that we should infer that the General Assembly overrode those distinctions through a cross-reference to the definition of "violent felony" in Code § 17.1-805. As the argument goes, the Commonwealth asks us to find that the statute does not actually mean "previously convicted of a violent felony" when it says "[a]ny person who violates this section . . . who was previously convicted of a violent felony as defined in § 17.1-805 . . . ." Instead, it means, "previously convicted of a violent felony as defined in § 17.1-805 or adjudicated delinquent of an offense that would have been a violent felony if committed by an adult." That is because Code § 17.1-805, which mandates that the Virginia Criminal Sentencing Commission create a "set of discretionary felony sentencing guidelines," contains not only a list of "violent felony offenses" in subparagraph (C), but also includes the instruction in subparagraph (B) that "[f]or *purposes of this chapter*, previous convictions shall include prior adult convictions and juvenile convictions and adjudications of delinquency based on an offense which could have been at the time of conviction a felony . . . ." (Emphasis added). The Commonwealth suggests this cross-reference has the effect of equating prior adult convictions and adjudications of delinquency for both of the mandatory minimum sentencing provisions in the statute—the provision applying to those previously convicted of both violent and nonviolent felonies.[2]

_____

[2] Relying on a theory not advanced by the Commonwealth, the partial dissent concludes that the statute can be parsed such that only the violent felony mandatory minimum applies to

We disagree that the cross-reference to Code § 17.1-805 both incorporates the list of felonies that are subject to enhanced penalties under Code § 18.2-308.2(A) and also undoes the statute's consistently separate treatment of felonies and juvenile adjudications. Instead, the reference to Code § 17.1-805 only incorporates the list of violent felonies. This is because "referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence." *Butler v. Fairfax Cnty. Sch. Bd.*, 291 Va. 32, 37 (2015) (quoting *Newberry Station Homeowners Ass'n v. Bd. of Supervisors*, 285 Va. 604, 615 (2013)). Applied here, the cross-reference to Code § 17.1-805 modifies the phrase "violent felony," not the word "convicted."

Furthermore, we cannot treat juvenile adjudications and felony convictions interchangeably in Code § 18.2-308.2(A) based on Code § 17.1-805's clear statement that "[f]or the purposes of *th[at] chapter*," juvenile adjudications are included within the definition of "previous convictions." (Emphasis added). For one, Code § 17.1-805 is within the chapter containing the General Assembly's instructions to the Virginia Criminal Sentencing Commission on how to create *discretionary* sentencing guidelines. The Commonwealth asks us to ignore the express limitation in Code § 17.1-805(B)—treating juvenile adjudications as felony convictions only for the purpose of creating the guidelines—and instead apply it to trigger *mandatory*

---

defendants with prior adjudications. Such a result is "common sense," they conclude, and advances the purported goal of preventing "dangerous" individuals from having firearms regardless of age. If we found any evidence in the statutory text (as compared to policy preferences) that the General Assembly intended to override the default rule about juvenile adjudications for one of the mandatory minimum sentencing provisions but not the other, we agree that it would be appropriate to limit our ruling today to the portion of the statute applying a mandatory minimum for "other felony convictions." But we find no support for this position, and we are required to interpret statutory language in context. That we interpret the statute differently does not render our interpretation "needlessly" expansive or constitute judicial overreach.

- 8 -

minimum sentences in a different statute in a different chapter. Not only would this ignore the limitation in Code § 17.1-805(B), but it would also undermine the "plain, obvious, and rational meaning" of Code § 18.2-308.2(A)'s separate treatment of convictions and juvenile adjudications. *Brown v. Commonwealth*, 75 Va. App. 388, 405 (2022) (quoting *Turner v. Commonwealth*, 226 Va. 456, 459 (1983)). In addition, the fact that Code § 17.1-805(B) was express in stating that the default rule about juvenile adjudications does not apply there only strengthens our conclusion that the General Assembly did not intend for Code § 18.2-308.2(A) to reach the same result by implication. *See Conkling v. Commonwealth*, 45 Va. App. 518, 523-24 (2005) ("That an adjudication is treated as a conviction in specific circumstances implies that it is not so treated as a general rule."). When the General Assembly wants to override its own default rule, it knows how to do so.

Finally, we reject the Commonwealth's suggestion that the underlying juvenile adjudication in this case was a "conviction" because Jennings was adjudicated delinquent at age 19. As the Commonwealth conceded at oral argument, there is no dispute that Jennings was adjudicated delinquent at age 19 for an offense he committed at age 17—while he was a juvenile. If a juvenile court sentences an adult who committed, before turning 18, an offense that would be a crime if committed by an adult, Code § 16.1-284 allows the court to impose "the penalties that are authorized to be imposed on adults for such violations." Opining on the precursor to this statute, the Attorney General stated that "[a] juvenile sentenced pursuant to Code § 16.1-177.1 is not convicted of a felony or a misdemeanor." 1975-76 Op. Va. Att'y Gen. 194, 195.[3] Instead, the juvenile "has merely been given an adult disposition on a juvenile charge, and such juvenile would not be subject to any of the attendant civil disabilities that are attached to a felony

---

[3] The text of Code § 16.1-284 is substantially similar to what the Attorney General interpreted in the prior iteration of the statute, Code § 16.1-177.1.

conviction." *Id.*[4] We find the reasoning of the Attorney General—consistent for nearly fifty years—persuasive, and we agree. *See Nejati v. Stageberg*, 286 Va. 197, 203 (2013) ("Although it is not binding on this Court, an Opinion of the Attorney General is 'persuasive' and may be used as an aid in construing legislative intent.").[5]

We conclude that under the plain language of Code § 18.2-308.2(A), the mandatory minimum sentencing provisions apply only where the person has a prior qualifying felony conviction. But because prior panel decisions from our Court have reached a different conclusion, we now consider whether we are bound to perpetuate the erroneous interpretation in those cases.

---

[4] In line with Code § 16.1-308's instruction that juvenile adjudications do not "impose any of the civil disabilities ordinarily imposed by conviction for a crime," the Attorney General has always opined that juvenile adjudications are not convictions of crimes. *See, e.g.*, 2002 Op. Va. Att'y Gen. 124, 126 ("[S]ubject to certain exceptions not relevant here, juveniles are charged with 'delinquent acts' rather than 'crimes'" and "[j]uveniles, thus, are not subject to adult penalties; instead they are subject only to the dispositions set forth in § 16.1-278.8."); 2001 Op. Va. Att'y Gen. 82 (noting that "[t]he Attorney General has long concluded that proceedings in a juvenile court are civil in nature" and that "a juvenile is not charged with a criminal act and the finding of delinquency is not a 'conviction' of a crime in a juvenile court"); 1987-88 Op. Va. Att'y Gen. 260 (emphasizing that "[p]rior Opinions of this Office consistently conclude that a finding of delinquency by a juvenile court is not a 'conviction' of a crime").

[5] We also reject the Commonwealth's suggestion that Jennings conceded below that his prior juvenile adjudication was a "conviction" for sentencing purposes and so he has approbated and reprobated by bringing this appeal. The approbate and reprobate doctrine applies when a litigant "has affirmatively staked out a position or asked the court to act," before changing positions, *Commonwealth v. Holman*, 303 Va. 62, 72 (2024), and when the error the defendant complains of on appeal is "obviously the result of his own strategy and actions at trial," *Rowe v. Commonwealth*, 277 Va. 495, 502 (2009). While the parties referred to Jennings' adjudication as a conviction at various points, Jennings did not stake out a position or ask the court to act in reliance on that position. Instead, he properly raised the issue of whether his juvenile adjudication required mandatory sentencing under Code § 18.2-308.2(A) through a timely motion to reconsider. And, at that hearing, the Commonwealth argued "[i]t is a juvenile adjudication for which he would have been at the time of his conviction a felony if it had been committed by an adult. That's not in dispute."

B. Because *Carter* was wrongly decided, and because *Prekker* was based on that incorrect analysis, we exercise our statutory authority to overrule both decisions.

The trial court applied the mandatory minimum sentence in Code § 18.2-308.2(A), triggered by Jennings' juvenile adjudication, because our prior decisions in *Carter* and *Prekker* required that result. In *Carter*, the appellant asked a panel of this Court to find that the mandatory penalty provision did not apply when a juvenile and domestic relations district court found him "guilty," at age 15, of an offense that would have been a violent felony if committed as an adult. 38 Va. App. at 121. Addressing the "violent felony" portion of the mandatory minimum, *Carter* looked mainly to the legislative intent of the statute: "[t]he statute is intended to 'prevent[] a person, who is known to have committed a serious crime in the past, from becoming dangerously armed, regardless of whether that person uses, displays, or conceals the firearm.'" *Id.* at 124 (second alteration in original) (quoting *Thomas v. Commonwealth*, 37 Va. App. 748, 754 (2002)). Then, reasoning backwards from that intent, *Carter* held that to "assure additional public protection from 'dangerously armed' felons with a demonstrated propensity for violence, the legislature mandated incarceration for 'any person . . . previously convicted' of a 'violent [predicate] felony.'" *Id.* (emphases omitted) (quoting Code § 18.2-308.2(A)).

Next, the panel addressed why the statute distinguished between convictions and adjudications. Although the two terms "sometimes differentiate determinations of guilt in juvenile and adult prosecutions," because the sentencing provision of Code § 18.2-308.2(A) applies to "any person," the panel concluded that this language "clearly embraces anyone found in violation of the prohibition." *Id.* at 125. The panel supported this interpretation by returning to the statute's purpose, finding that excluding juvenile adjudications from the mandatory minimum "would exempt dangerous felons, with demonstrated violent propensities, from a mandated punishment intended to enhance public protection, a narrow and illogical construction

- 11 -

at odds with legislative intent." *Id.* *Carter* did not mention Code § 16.1-308 in its discussion of legislative intent. Finally, *Carter* pointed out that two other statutes expressly considered juvenile adjudications as convictions for sentencing purposes, thus implying that Code § 18.2-308.2(A) should be interpreted in the same way. *See id.* at 125-26.

In *Prekker*, another panel of this Court again considered whether juvenile adjudications triggered the mandatory minimum in Code § 18.2-308.2(A), this time for nonviolent offenses. Breaking no new ground, the Court applied the holding in *Carter*, noting that, while published panel decisions "bind all other three-judge panels under the interpanel accord doctrine . . . they do not bind the Court sitting *en banc*." 66 Va. App. at 110 (alteration in original) (quoting *Startin v. Commonwealth*, 56 Va. App. 26, 39 n.3 (2010) (en banc)).

Now, sitting en banc, we do not take lightly whether to overturn these decisions. Because the legislature is "free to alter what we have done," the doctrine of stare decisis has "special force" in matters of statutory interpretation. *Patterson v. McLean Credit Union*, 491 U.S. 164, 172-73 (1989).[6] We will not revisit every prior statutory interpretation decision simply because reasonable minds may differ.

The doctrine of stare decisis, which is "more than a mere cliche," is strongest "when a *court of last resort* has established a precedent, after full deliberation upon the issue by the

---

[6] Relatedly, the Commonwealth argues that we should consider the General Assembly's failure to amend Code § 18.2-308.2(A) after *Carter* as evidence that the legislature acquiesced to the panel's interpretation there. However, the legislative acquiescence "rule of construction" only applies "in instances where we have found that the statutory language is ambiguous." *Office of Att'y Gen. v. State Corp. Comm'n*, 288 Va. 183, 191 n.10 (2014). The Commonwealth has conceded that Code § 18.2-308.2(A) is unambiguous, and we agree. When "the language . . . is plain and unambiguous, we do not presume here that the General Assembly has acquiesced to the Commission's interpretation." *Id.*; *see also Jones v. Liberty Glass Co.*, 332 U.S. 524, 533-34 (1947) ("[T]he doctrine of legislative acquiescence is at best only an auxiliary tool for use in interpreting ambiguous statutory provisions.").

- 12 -

court." *Selected Risks Ins. Co. v. Dean*, 233 Va. 260, 265 (1987) (emphasis added). A panel of this Court is not the "court of last resort" in Virginia.

Yet, "determinacy concerns underlying *stare decisis* still play an important role when an en banc appellate court reviews a panel decision." *Startin*, 56 Va. App. at 39 n.3 (overruling a panel's decision interpreting a statute). At the same time, "the doctrine cannot be of such force that it binds the en banc court or in any way undermines our duty under Code § 17.1-402(D) to provide full-court review of prior three-judge panel decisions." *Id.* That is because "the principal utility of determination by the courts of appeals sitting [e]n banc is to enable the court to maintain its integrity as an institution by making it possible for a majority of its judges always to control and to secure uniformity and continuity in its decisions." *Id.* (quoting *United States v. American-Foreign S.S. Corp.*, 363 U.S. 685, 689-90 (1960)). A "flagrant error or mistake" is always grounds to reconsider a past precedent. *Selected Risks Ins. Co.*, 233 Va. at 265.

After scrutinizing the plain language of Code § 18.2-308.2(A), "we find that 'a mistake exists in our prior decisions.'" *Startin*, 56 Va. App. at 39 (quoting *Selected Risks Ins. Co.*, 233 Va. at 265). *Carter* ignored the plain statutory language that differentiates between juvenile adjudications and felony convictions in favor of presumed legislative intent and public policy rationales. The opinion isolated the phrase "any person" without acknowledging that "any person" is immediately modified by "who was previously convicted of a violent *felony*" and "any other *felony*." *Compare Carter*, 38 Va. App. at 125 (emphasis added), *with* Code § 18.2-308.2(A) (emphases added). And rather than apply the default rule on juvenile adjudications from Code § 16.1-308—"[e]xcept as otherwise provided by law" juvenile adjudications do not "impose any of the civil disabilities ordinarily imposed by conviction for a crime"—the *Carter* decision improperly drew support from two other statutes that expressly included juvenile adjudications as convictions as grounds to interpret Code § 18.2-308.2(A) in

- 13 -

the same way. But such statutes demand the opposite result. "That an adjudication is treated as a conviction in specific circumstances implies that it is not so treated as a general rule." *Conkling*, 45 Va. App. at 523-24.

Thus, we exercise our authority under Code § 17.1-402(D) to sit en banc and "overrule any previous decision by any panel or of the full court." "Our strong adherence to the doctrine of stare decisis does not . . . compel us to perpetuate what we believe to be an incorrect application of the law . . . ." *Startin*, 56 Va. App. at 40 (quoting *Nunnally v. Artis*, 254 Va. 247, 253 (1997)).[7] This is particularly true where there are minimal "reliance interests at stake," and the decision was not "well reasoned." *Hampton v. Meyer*, 299 Va. 121, 132-33 (2020) (quoting *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 362-63 (2010)). Because the interpretation in *Carter* directly conflicts with the plain language of Code § 18.2-308.2(A), which differentiates between "convictions" and "adjudications," we overrule that decision. We likewise overrule the portion of *Prekker* that relied on and extended *Carter*'s reasoning.

C. Jennings must be resentenced.

Code § 18.2-308.2(A) differentiates between "convictions" and "adjudications," and only applies mandatory sentencing provisions where a defendant has a prior qualifying felony conviction. Because the trial court was bound by our prior decisions at the time of sentencing, we vacate Jennings' sentence and remand for resentencing. The trial court is no longer required to impose a two-year mandatory minimum sentence under Code § 18.2-308.2(A). Instead, the

---

[7] We exercised this same authority in *Armstrong v. Commonwealth*, 36 Va. App. 312, 321 (2001) (en banc), overruling two prior cases interpreting Code § 18.2-308.2 because the prior panel decisions were based on a "clear error in application of [the] statute." Because there was a "mistake" in our prior decisions, we concluded that we had "clear authority under Code § 17.1-402(D) to overrule those decisions." *Id.* The Supreme Court later affirmed our decision without questioning whether it was an appropriate exercise of judicial authority. *See Armstrong v. Commonwealth*, 263 Va. 573, 585 (2002).

trial court may use its discretion to impose a sentence the court deems appropriate for Jennings'

commission of a Class 6 felony.

CONCLUSION

For these reasons, we vacate the sentencing order and remand to the circuit court for

resentencing consistent with this opinion.

*Reversed, vacated, and remanded.*

Beales, J., with whom Athey and Fulton, JJ., join, dissenting in part, and concurring only in the judgment.

Today, the Court overturns *Carter v. Commonwealth*, 38 Va. App. 116 (2002) — a case that has been established precedent for nearly a quarter century. The Court also overturns *Prekker v. Commonwealth*, 66 Va. App. 103 (2016); and *Parks v. Commonwealth*, No. 2780-02-1, 2003 Va. App. LEXIS 385 (July 8, 2003) — and also the *ratio decidendi* in *Conkling v. Commonwealth*, 45 Va. App. 518 (2005). It does so even though the Supreme Court has engaged in a similar statutory analysis in a case also involving mandatory minimum sentences involving a defendant previously adjudicated delinquent of what would have been a felony. Furthermore, the Court needlessly overturns *Carter* because we do not need to even reach *Carter* to reach the right result in this particular case, given the factual differences between this case and *Carter*. Although this appeal specifically concerns the two-year mandatory minimum sentencing provision of Code § 18.2-308.2(A), where the predicate offense was a juvenile adjudication of delinquency for a *nonviolent* felony, the Court's decision today also abrogates longstanding case law with respect to predicate offenses where the adjudication of delinquency was for *violent* felonies.[8] Therefore, I must write separately to respectfully disagree with the Court's remarkable lack of judicial restraint reflected by this unnecessary and ill-advised foray in overturning several precedents when the Court simply does not need to engage in such sweeping action to resolve this appeal.

---

[8] The decision to overturn *Carter* may well implicate the five-year mandatory minimum sentences in numerous cases, including *Perry v. Commonwealth*, 61 Va. App. 502 (2013); *Jay Hoon Kim v. Commonwealth*, No. 0116-17-1, 2017 Va. App. LEXIS 247 (Oct. 3, 2017); *Thomas v. Commonwealth*, No. 1322-17-1, 2018 Va. App. LEXIS 254 (Oct. 2, 2018); *Hicks v. Commonwealth*, No. 1147-21-2, 2022 Va. App. LEXIS 401 (Aug. 30, 2022); and others.

I. Statutory Interpretation of Code § 18.2-308.2(A)

The Supreme Court has often stated, "The primary purpose of statutory interpretation 'is to ascertain and give effect to legislative intent.'" *Botkin v. Commonwealth*, 296 Va. 309, 314 (2018) (quoting *Brown v. Commonwealth*, 284 Va. 538, 542 (2012)). "Statutory interpretation is a question of law which we review *de novo*, and we determine the legislative intent from the words used in the statute, applying the plain meaning of the words unless they are ambiguous or would lead to an absurd result." *Wright v. Commonwealth*, 278 Va. 754, 759 (2009). "Once the legislature has acted, the role of the judiciary 'is the narrow one of determining what [the legislature] meant by the words it used in the statute.'" *Dionne v. Se. Foam Converting & Packaging, Inc.*, 240 Va. 297, 304 (1990) (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 318 (1980)). "While it is true that penal statutes must be strictly construed against the Commonwealth in criminal cases, we will not apply an unreasonably restrictive interpretation of the statute that would subvert the legislative intent expressed therein." *Botkin*, 296 Va. at 314 (quoting *Alger v. Commonwealth*, 267 Va. 255, 259 (2004)).

Any person who violates Code § 18.2-308.2(A) is guilty of a Class 6 felony, which carries a sentence of imprisonment ranging from one year to five years. Code § 18.2-10(f). "However, any person who violates this section by knowingly and intentionally possessing or transporting any firearm *and who was previously convicted of a violent felony as defined in § 17.1-805* shall be sentenced to a mandatory minimum term of imprisonment of five years." Code § 18.2-308.2(A) (emphasis added). This mandatory minimum sentencing provision expressly incorporates by reference, without limitation to any specific subparagraph, Code § 17.1-805 — which, in turn, enumerates in subsection C an extensive list of "violent felony offenses," and also defines in subsection B the term "previous convictions" to include "prior adult convictions *and* juvenile convictions and adjudications of delinquency based on an offense

- 17 -

which would have been at the time of conviction a felony if committed by an adult." Code § 17.1-805 (emphasis added).

As courts have long recognized, "'when one statute adopts a provision of another statute by specific reference,' the effect is the same 'as if the adopting statute had itself spelled out the terms of the adopted provision.'" *Tanner v. Commonwealth*, 72 Va. App. 86, 100 (2020) (quoting *United States v. Myers*, 553 F.3d 328, 331 (4th Cir. 2008) (citing *Hassett v. Welch*, 303 U.S. 303, 314 (1938))); *see also Rollins v. Town of Gordonsville*, 216 Va. 25, 26 (1975) (*per curiam*) ("When one statute adopts another by specific reference, . . . those particular parts of the statute referred to are incorporated."). In this case, the five-year mandatory minimum sentencing provision in Code § 18.2-308.2(A) does not limit its incorporation by reference of Code § 17.1-805 to only subsection C enumerating certain "violent felony offenses," but rather specifically references the entirety of Code § 17.1-805 — thereby incorporating both the applicable list of "violent felony offenses" in subsection C and also the applicable definition of "previous convictions" in subsection B. Indeed, we "must presume that the General Assembly chose, with care, the words that appear in a statute, and must apply the statute in a manner faithful to that choice." *Jones v. Commonwealth*, 296 Va. 412, 415 (2018) (quoting *Johnson v. Commonwealth*, 292 Va. 738, 742 (2016)). Mindful of the statutory canon *expressio unius est exclusio alterius* (when one or more things of a class are expressly mentioned, others of the same class are excluded), it is clear here that the General Assembly deliberately chose to reference the entirety of Code § 17.1-805 in the five-year mandatory minimum sentencing provision of Code § 18.2-308.2(A).[9]

---

[9] The General Assembly certainly knows how to incorporate by reference only specific subsections of Code § 17.1-805 in other statutes. *See, e.g.*, Code § 18.2-248(C)(4)(a), Code § 18.2-460(C), and Code § 53.1-231.2 (where the General Assembly specifically incorporated only subsection C of Code § 17.1-805 — not the entire statute as the General Assembly has done in Code § 18.2-308.2(A)).

In contrast, immediately following the five-year mandatory minimum sentencing provision in Code § 18.2-308.2(A) is a two-year mandatory minimum sentencing provision that states, "Any person who violates this section by knowingly and intentionally possessing or transporting any firearm and who was previously convicted of any other felony within the prior 10 years shall be sentenced to a mandatory minimum term of imprisonment of two years." Code § 18.2-308.2(A). However, conspicuously absent from the two-year mandatory minimum sentencing provision is any reference at all to Code § 17.1-805.

As the Supreme Court has emphasized, "when the General Assembly has used specific language in one instance but omits that language or uses different language when addressing a similar subject elsewhere in the Code, [the Court] must presume that the difference in the choice of language was intentional." *Morgan v. Commonwealth*, 301 Va. 476, 482 (2022) (quoting *Zinone v. Lee's Crossing Homeowners Ass'n*, 282 Va. 330, 337 (2011); *accord Rives v. Commonwealth*, 284 Va. 1, 3 (2012)). "Courts must rely on this presumption 'because under these circumstances, it is evident that the General Assembly "knows how" to include such language in a statute to achieve an intended objective,' and therefore, omission of such language in another statute [or subsection of a statute] 'represents an unambiguous manifestation of a contrary intention.'" *Id.* (quoting *Brown*, 284 Va. at 545 (quoting *Halifax Corp. v. Wachovia Bank*, 268 Va. 641, 654 (2004))). Therefore, I would hold that, because the General Assembly omitted any reference to Code § 17.1-805 in the two-year mandatory minimum sentencing provision of Code § 18.2-308.2(A) — unlike in the five-year mandatory minimum sentencing provision — such omission was purposeful and a clear reflection of the General Assembly's

- 19 -

intent to punish *dangerous* criminals who have previously committed *violent* offenses either as a juvenile or as an adult with a mandatory minimum sentence of five years.[10]

The majority claims that "the General Assembly intended for the mandatory sentencing provisions [in Code § 18.2-308.2] to apply only to persons with qualifying prior felony convictions" because "the default rule" is that "juvenile adjudications do not 'impose any of the civil disabilities ordinarily imposed by conviction for a crime.'" This contention conflates what may be the legislature's intent in Code § 16.1-308 with what common sense and logic dictate to be the legislative purpose for Code § 18.2-308.2. That purpose is plainly evident — by simply reading Code § 18.2-308.2. The main goal of Code § 18.2-308.2 — a statute that defines "penalties" for "possession or transportation of firearms . . . by convicted felons" — is clearly to take firearms out of the hands of people determined by the General Assembly to be dangerous. Code § 18.2-308.2. The General Assembly made clear its intention to limit the application of the "default rule" so as to prohibit the possession of firearms by people who previously were adjudicated or convicted of violent felonies as juveniles — and to serve the important goals of both crime prevention and juvenile rehabilitation by limiting their possession of firearms until they reach 29 years of age.

To contend otherwise defies that common sense goal because an adult who was adjudicated delinquent of a violent felony committed when he was 17 is likely no less dangerous than an adult who was convicted of a violent felony that was committed when he was 18 or 19. By enacting Code § 18.2-308.2(A), the General Assembly obviously crafted a statute to prohibit

---

[10] To the extent that our remanding to the circuit court for the resentencing of Jennings would conflict with statements made by this Court in *Prekker* (which also involves a *two-year* mandatory minimum sentence for an appellant who had been previously adjudicated delinquent of offenses that would have been *nonviolent* felonies if the appellant had been an adult), I would concur that that portion of *Prekker's* holding would no longer be good law. Reaching that decision might well be required by the Court's judgment today, given the facts in *Jennings*, but reaching this Court's 2002 decision in *Carter* would not be.

the possession of firearms by people adjudicated delinquent as juveniles of an act that would have been a violent felony because Code § 18.2-308.2(A)(ii) and Code § 18.2-308.2(A)(iii) explicitly address juveniles adjudicated delinquent. *See* Code § 18.2-308.2(A). The canons of statutory construction do not "require[] that a penal statute be strained and distorted in order to exclude conduct clearly intended to be within its scope." *United States v. Raynor*, 302 U.S. 540, 552 (1938). Such a construction "cannot provide a substitute for common sense." *United States v. Standard Oil Co.*, 384 U.S. 224, 225-26 (1966); *see also Martin v. Commonwealth*, No. 1966-04-4, slip op. at 6 n.3, 2005 Va. App. LEXIS 337, at *10 n.3 (Sep. 6, 2005) (quoting *Raynor* and *Standard Oil* for the same propositions). For these reasons, the majority's broad application of Code § 16.1-308 to restrict the scope of Code § 18.2-308.2(A) — in an attempt to tell us what the General Assembly intended in Code § 18.2-308.2 — is simply unpersuasive.

In short, the plain language of Code § 18.2-308.2(A) — with due consideration to the words used, their context in the overall statutory language, and the applicable canons of statutory construction — certainly shows that "previous convictions" under the five-year mandatory minimum sentencing provision for *violent* felonies includes both prior adult convictions *and* prior juvenile convictions and adjudications of delinquency (based on an offense which would have been at the time of conviction a *violent* felony if committed by an adult). On the other hand, the two-year mandatory minimum sentencing provision applies *only* to those who were "previously convicted of *any other felony* within the prior 10 years," and *not* to *nonviolent* felony offenses involving juveniles. Consequently, Jennings's sentence in this case must be reversed and remanded for resentencing because he was *adjudicated delinquent* of an act that would have been a *nonviolent* felony if committed by an adult, so the two-year mandatory minimum sentence cannot apply to him. This holding, however, in no way implicates the five-year mandatory

- 21 -

minimum sentence for *violent* felony offenses, and the majority commits a significant error in needlessly reaching that issue and overturning several prior decisions of this Court.

II. The Supreme Court's Interpretation of Code § 18.2-308.2(A)

The Supreme Court has used a similar statutory interpretation analysis to address the very same mandatory minimum sentencing provisions contained in Code § 18.2-308.2(A). In *Preston v. Commonwealth*, 281 Va. 52 (2011), the accused — like Jennings — was charged under Code § 18.2-308.2(A)(iii). *Id.* at 57 (quoting Code § 18.2-308.2(A)(iii)). At trial, the Commonwealth introduced into evidence an order from the circuit court showing that Preston had been convicted of grand larceny as well as records from the juvenile and domestic relations district court proving the fact of another conviction, but not the nature of the conviction. *Id.* at 56. The juvenile records only showed that (i) Preston had been *charged* with breaking and entering, in violation of Code § 18.2-91 (which if committed by an adult would be a violent felony under Code § 17.1-805); (ii) that appointment of counsel had been requested; (iii) that there had been an adjudication of guilt; and (iv) that probation and community service had been imposed. *Id.*

In finding that the juvenile records did not prove beyond a reasonable doubt that Preston had been adjudicated delinquent of the violent felony of breaking and entering, the Supreme Court began its analysis by engaging in the following interpretation of Code § 18.2-308.2(A):

> The statute under which Preston was convicted prohibits the knowing and intentional possession or transportation of a firearm by "any person under the age of 29 who was adjudicated delinquent as a juvenile 14 years of age or older at the time of the offense of a delinquent act which would be a felony if committed by an adult." Code § 18.2-308.2(A)(iii). Any person violating this section "who was previously convicted of a violent felony as defined in [Code] § 17.1-805 shall be sentenced to a mandatory minimum term of imprisonment of five years." Code § 18.2-308.2(A). As we have explained, "the Commonwealth is required to prove beyond a reasonable doubt that the defendant was previously convicted of a violent felony, designated as such under Code § 17.1-805, in order to establish that the defendant is subject to the five-year mandatory minimum sentence to be

imposed under Code § 18.2-308.2(A)." *Rawls v. Commonwealth*, 272 Va. 334, 348 (2006). In the absence of such proof, "the defendant is subject to imprisonment for a term of between two years and five years." *Id.*

*Preston*, 281 Va. at 57.[11] Because the Commonwealth failed to prove in *Preston* that the accused had been previously adjudicated delinquent of an act that would be a *violent* felony if committed by an adult, but instead proved only his prior adjudication of a *nonviolent* felony, the Supreme Court remanded the matter for a new sentencing proceeding based on possession of a firearm after having been adjudicated delinquent of an act that would be a *nonviolent* felony if committed by an adult. *Id.* at 59 (citing *Waller v. Commonwealth*, 278 Va. 731, 737-38 (2009)).

The Supreme Court's decision in *Preston* — like this Court's decisions in *Carter*, *Parks*, and *Conkling* — supports a conclusion that the five-year mandatory minimum sentencing provision in Code § 18.2-308.2(A) applies to a person who was previously adjudicated delinquent of an act that would have been a violent felony if committed when he was an adult. A contrary holding would mean that the Commonwealth's failure to prove that Preston had been previously adjudicated delinquent of a violent felony offense would be irrelevant to determining whether the five-year mandatory minimum sentence in Code § 18.2-308.2(A) applied to him. Although the Supreme Court's ultimate disposition in *Preston* was predicated on the

---

[11] In *Rawls v. Commonwealth*, Rawls was initially charged with "possession of a firearm 'after having been convicted of a felony not defined in [Code] § 17.1-805.'" 272 Va. at 340. In fact, "[a]mong other felony convictions," Rawls had actually been previously convicted as an adult of "breaking and entering in violation of Code § 18.2-91," which is one of the "violent felony offenses" enumerated in Code § 17.1-805 "which subjects the defendant to enhanced punishment." *Id.* at 340 n.1. The circuit court sentenced Rawls "in accord with the jury's verdict" "for the mandatory sentence of imprisonment for five years." *Id.* at 342-43. In affirming the circuit court's judgment, the Supreme Court analyzed the statutory scheme of Code § 18.2-308.2(A). The Supreme Court explained that under Code § 18.2-308.2(A), "the Commonwealth is required to prove beyond a reasonable doubt that the defendant was previously convicted of a violent felony, designated as such under Code § 17.1-805, in order to establish that the defendant is subject to the five-year mandatory minimum sentence to be imposed under Code § 18.2-308.2(A)." *Id.* at 348. "Absent such proof, the defendant is subject to imprisonment for a term of between two years and five years." *Id.*

- 23 -

Commonwealth's lack of evidence regarding the defendant's prior conviction, the Supreme Court's statutory analysis of Code § 18.2-308.2(A) certainly lends credence to the conclusion that the five-year mandatory minimum sentencing provision in Code § 18.2-308.2(A) applies to a person who was adjudicated delinquent of a violent felony offense.

In short, the Court's decision today to reverse Jennings's sentence and remand for resentencing consistent with a juvenile adjudication of delinquency for a *nonviolent* felony in no way necessitates overturning our decision in *Carter*, which dealt with a *violent* felony. There is simply no need to do so because we can properly handle the case before us in *Jennings* without having to deal with *Carter* at all. Therefore, even if the majority were correct in its reasoning about *Carter*, there is no need to expand what is before us to strike down a precedent of 22 years, where, given the facts in this case, we simply do not need to do so. However, it remains the case that the statutory interpretation that this Court unanimously upheld in *Carter* has been similarly applied by the Supreme Court in its decision in *Preston*. Consequently, overturning *Carter* and its progeny is not only unnecessary to reach the proper result in this case but also stands in contrast to the Supreme Court's utilization of the same basic statutory analysis in interpreting Code § 18.2-308.2(A).

III. *Stare Decisis* Principles

It is well settled that, in order to overturn settled precedent, "it is not alone sufficient that we would decide a case differently now than we did then. To reverse course, we require as well what we have termed a 'special justification' — over and above the belief 'that the precedent was wrongly decided.'" *Kimble v. Marvel Entm't, LLC*, 576 U.S. 446, 455 (2015) (quoting *Halliburton Co. v. Eric P. John Fund, Inc.*, 573 U.S. 258, 266 (2014)). The Supreme Court has recognized that "*stare decisis* carries enhanced force when a decision . . . interprets a *statute*. Then, unlike a constitutional case, critics of our ruling can take their objections across the street,

and Congress can correct any mistake it sees." *Id.* at 456 (emphasis added). Indeed, "[s]*tare decisis* is at its zenith" when a court has previously interpreted a statute. *Hampton v. Meyer*, 299 Va. 121, 138 (2020) (Kelsey, J., dissenting) (citing *Halliburton Co.*, 573 U.S. at 298 (Thomas, J., concurring in the judgment); Bryan A. Garner, et al., *The Law of Judicial Precedent* 333, 352, 409-10 (2016)). As the Supreme Court of Virginia has made clear, "In Virginia, the doctrine of *stare decisis* is more than a mere cliche. That doctrine plays a significant role in the orderly administration of justice by assuring consistent, predictable, and balanced application of legal principles." *Selected Risks Ins. Co. v. Dean*, 233 Va. 260, 265 (1987).

"Where a decision, and especially a line of decisions, has been acquiesced in, where it has been followed by other cases . . . it should not be disturbed, except by the interposition of legislative power." *Fuller v. Virginia Trust Co.*, 183 Va. 704, 712 (1945). *See also Watson v. United States*, 552 U.S. 74, 92-93 (2007) (emphasizing that "long congressional acquiescence" — there totaling 14 years — "enhance[s] even the usual precedential force we accord to our interpretations of statutes"). "A difference of opinion within the Court . . . does not keep the door open for another try at statutory construction" because "Congress remains free to alter what we have done." *Watson*, 552 U.S. at 82 (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 172-73 (1989)). "When the General Assembly acts in an area in which one of its appellate courts has already spoken, it is presumed to know the law as the court has stated it and to acquiesce therein." *Vlaming v. W. Point Sch. Bd.*, 302 Va. 504, 603 (2023) (quoting *Weathers v. Commonwealth*, 262 Va. 803, 805 (2001)).

The General Assembly has amended Code § 18.2-308.2 sixteen times since this Court's decision in *Carter*. In 2004, the General Assembly even specifically addressed the mandatory minimum sentencing provisions in Code § 18.2-308.2(A), yet the legislature did not change those provisions in any way that would alter or call into question this Court's holding in *Carter*.

More recently, the General Assembly rejected attempts in 2022 and in 2024 to amend the mandatory minimum sentencing provisions in Code § 18.2-308.2(A), including an attempt to do away with those mandatory minimum sentencing provisions altogether. *See* H.B. 179, Va. Gen. Assem., Reg. Sess. (2024); S.B. 104, Va. Gen. Assem., Reg. Sess. (2022).

Armed with this full knowledge, the General Assembly has repeatedly elected to retain the mandatory minimum sentencing provisions in Code § 18.2-308.2(A), and the amendments that the General Assembly has made to Code § 18.2-308.2 in no way suggest a desire to alter the well-established application of the mandatory minimum sentencing provisions. *See Va. Ret. Sys. v. Blair*, 64 Va. App. 756, 766 (2015). Therefore, given that it has been more than 22 years since *Carter* was decided, the General Assembly has certainly assented to this Court's prior interpretation of Code § 18.2-308.2(A). In doing so, the General Assembly has strengthened the already considerable precedential force supporting this Court's position in *Carter*. As a nearly quarter-of-a-century-old precedent interpreting a statute which the General Assembly has repeatedly amended without calling into question *Carter* or its progeny, *Carter v. Commonwealth* has been relied upon by both the legislature and the judiciary, and it should thus remain in place — especially when the facts at issue in the case currently before us do not require in any way that we overturn *Carter* in order to decide the case now before us.

IV. Conclusion

Today, by unnecessarily overturning our decision in *Carter* and our decisions in other cases, the Court transforms *en banc* review from revisiting the three-judge panel decision and reconciling any of our precedents that contradict each other (or that might contradict a more recent Supreme Court decision) into an exercise of overturning precedent with which we simply disagree, even if we do not have a case that contradicts it — and even though we do not need to do so to decide the case before us today. In short, we are instead using an *en banc* case in a

- 26 -

disturbing way to overturn longstanding precedent in *Carter* and other cases, when doing so also violates the fundamental principle that we decide our cases on the narrowest and best grounds available. *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020). For all of these reasons, I concur only in the judgment in this case reversing the circuit court's sentence of Jennings (and remanding to the circuit court for resentencing). And I respectfully disagree with — and dissent from — the Court's adventure today in unnecessarily overturning precedent.

# VIRGINIA:

*In the Court of Appeals of Virginia on*  **Tuesday**  *the*  **4th**  *day of*  **June, 2024**.

Ted Anthony Jennings, Jr.,                                                                 Appellant,

 against            Record No. 1407-22-3
                    Circuit Court Nos. CR21000464-00 and CR21000464-01

Commonwealth of Virginia,                                                          Appellee.

Upon a Petition for Rehearing En Banc

Before the Full Court

On May 21, 2024, the appellant, by counsel, filed a petition requesting that the Court set aside the judgment rendered on May 7, 2024, and grant a rehearing en banc on the issue(s) raised in the petition.

On consideration whereof and pursuant to Rule 5A:35 of the Rules of the Supreme Court of Virginia, the Court grants the petition for rehearing en banc and reinstates the appeal of those issues on the docket.  The Court stays the mandate previously entered in this case pending the Court's en banc decision.

The parties must file briefs in compliance with the schedule set forth in Rule 5A:35(b).

A Copy,

Teste:

A. John Vollino, Clerk

By:   *original order signed by a deputy clerk of the*
      *Court of Appeals of Virginia at the direction*
      *of the Court*

Deputy Clerk

Present:   Judges Ortiz, Lorish and Senior Judge Petty
Argued at Lexington, Virginia


TED ANTHONY JENNINGS, JR.

                                         MEMORANDUM OPINION[*] BY

v.      Record No. 1407-22-3                JUDGE WILLIAM G. PETTY
                                              MAY 7, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
F. Patrick Yeats, Judge

Christopher T. Holinger (Davis Law, PLC, on briefs), for appellant.

Stephen J. Sovinsky, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial, the Circuit Court of the City of Lynchburg convicted Ted Anthony

Jennings, Jr. of possessing a firearm within ten years of him being adjudicated delinquent of a

non-violent felony offense in violation of Code § 18.2-308.2.  On appeal, Jennings contends that the

trial court erred in sentencing him to a two-year period of mandatory incarceration.  For the

following reasons, we affirm.

## BACKGROUND

On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court."  *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires us to "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On February 16, 2011, Jennings was adjudicated delinquent of one felony count of receiving stolen property, committed when he was 17 years old. On January 12, 2021, Lynchburg Police Officer Glerum stopped Jennings for using a cell phone while driving. During the stop, Jennings told Glerum that he had a firearm in his car. Glerum seized the firearm and arrested Jennings. He later obtained warrants charging Jennings for carrying a concealed weapon and being a felon in possession of a firearm less than ten years after a felony adjudication.[1]

At trial, the court received evidence of Jennings's felony adjudication, and Glerum's testimony recounting the traffic stop. Jennings testified that he was unaware of his status as a felon and recounted a 2017 offense for which he was convicted of carrying a concealed weapon, but not of being a felon in possession of a firearm. The trial court convicted Jennings and sentenced him to a total of 5 years and 12 months' incarceration with all but 2 years suspended. At sentencing, the trial court stated that it "was not going to impose any more time than the mandatory minimum" and noted that its "hands [were] really tied with respect to the sentencing" because of the mandatory minimum that it could not "deviate below."

Jennings subsequently moved to set aside the sentence. He contended that he had reasonably believed that he was entitled to carry a firearm.[2] He further argued that the mandatory minimum sentence should not apply because the mandatory sentencing language of Code § 18.2-308.2 specifies that the triggering event for the mandatory sentence is to be

---

[1] Jennings does not challenge on appeal his conviction for carrying a concealed weapon.

[2] Jennings asserted that he had been found with a firearm on several prior occasions but was never charged with a violation of Code § 18.2-308.2. This argument was not raised at trial.

"convicted" of a felony, not "adjudicated delinquent." After oral argument,[3] the trial court took the motions under advisement before ultimately denying them. The trial court granted Jennings's motion to remain on bond pending his appeal.

ANALYSIS

Code § 18.2-308.2(A) states, in relevant part, that

> [i]t shall be unlawful for . . . any person under the age of 29 who was adjudicated delinquent as a juvenile 14 years of age or older at the time of the offense of a delinquent act which would be a felony if committed by an adult . . . to knowingly and intentionally possess or transport and firearm . . . .

Further, "any person who violates this section by knowingly and intentionally possessing or transporting any firearm and who was previously convicted of any other felony within the prior [ten] years shall be sentenced to a mandatory minimum term of imprisonment of two years." *Id.* At the time of the offense, Jennings was 28 years old, and his juvenile adjudication had occurred 9 years, 10 months, and 27 days earlier. These time frames fall squarely within the statutory proscription.

Jennings argues that because the mandatory minimum portion of the statute refers only to convictions, it does not apply to those who were adjudicated delinquent as a juvenile. Therefore, he continues, because his predicate offense was an adjudication, the mandatory minimum sentence requirement in the statute did not apply. Rather, he argues, the trial court should have sentenced him for a Class 6 felony that was not subject to a mandatory minimum period of incarceration. We disagree.

Our decision in *Carter v. Commonwealth*, 38 Va. App. 116 (2002), is dispositive. Carter, adjudicated delinquent of a violent felony as defined by Code § 17.1-205, argued "that the mandatory sentencing provision of Code § 18.2-308.2 . . . was applicable only to an accused

---

[3] At argument, Jennings expanded his request to include a motion for a new trial.

- 3 -

'previously *convicted* of a violent felony,' not 'a [prior] juvenile *adjudication*.'" *Id.* at 121 (second alteration in original). Rejecting that argument, we found that the statute is intended "to protect the public from the threat of dangerously armed felons." *Id.* at 125. To accomplish that purpose, the statutory proscription expressly includes "all persons previously 'found guilty,' while juveniles, of a 'delinquent act,' deemed felonious." *Id.*

We explained that the "[s]ubsequent reference in Code § 18.2-308.2(A) to 'conviction or adjudication' simply recognizes terms that sometimes differentiate determinations of guilt in juvenile and adult prosecutions. Thus, the inclusive language, '*any person*,' which appears in the punishment provisions of the statute, clearly embraces anyone found in violation of the prohibition." *Id.* In other words, the statutory language "promotes inclusion, not exclusion." *Id.* The fact that Jennings's predicate offense was non-violent does not alter our analysis. We note that *Carter* was not limited to "violent" offenses; it holds that adjudications and convictions are synonymous for sentencing under Code § 18.2-308.2.

Jennings concedes that our case law is adverse to his arguments, but contends that *Carter* was wrongly decided. However, that is not an argument that this panel may address. The interpanel-accord doctrine provides that a decision of a prior panel of this Court "'becomes a predicate for application of the doctrine of stare decisis' and cannot be overruled except by the Court of Appeals sitting en banc[4] or by the Virginia Supreme Court." *Butcher v. Commonwealth*, 298 Va. 392, 397 n.6 (2020) (quoting *Clinchfield Coal Co. v. Reed*, 40 Va. App. 69, 73 (2003)).

---

[4] We deny without prejudice Jennings's request that this panel "submit[] this matter for en banc review on its own motion." (Emphasis omitted). Jennings has the right to request such a hearing following the decision of this panel. *See* Code § 17.1-402(D).

- 4 -

CONCLUSION

Pursuant to this Court's binding precedent, the trial court did not err in imposing a

mandatory minimum sentence. Accordingly, we affirm the trial court's judgment.

*Affirmed.*

Lorish, J., with whom Ortiz, J., joins, concurring.

I agree that the interpanel-accord doctrine requires this panel to follow our Court's prior decision in *Carter v. Commonwealth*, 38 Va. App. 116 (2002), and that *Carter* conclusively resolves this case. I write separately because I agree with Jennings that *Carter* was wrongly reasoned and that this Court should reconsider *Carter* en banc.

The issue Jennings raises is one of statutory interpretation. "As always, when interpreting a statute, 'our primary objective is to "ascertain and give effect to legislative intent," as expressed by the language used in the statute.'" *Morris v. Commonwealth*, 77 Va. App. 510, 517 (2023) (en banc) (quoting *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012)). "[W]e must assume that 'the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute.'" *City of Virginia Beach v. ESG Enters., Inc.*, 243 Va. 149, 153 (1992) (quoting *Barr v. Town & Country Props., Inc.*, 240 Va. 292, 295 (1990)). We must "giv[e] to every word and every part of the statute, if possible, its due effect and meaning." *Epps v. Commonwealth*, 47 Va. App. 687, 714 (2006) (en banc) (quoting *Posey v. Commonwealth*, 123 Va. 551, 553 (1918)). In so doing, we should interpret words in a statute "if possible, to avoid rendering [other] words superfluous." *Cook v. Commonwealth*, 268 Va. 111, 114 (2004).

Our decision in *Carter* ignores these fundamental principles by interpreting "previously convicted of any other felony" to mean the same thing as "was adjudicated delinquent as a juvenile." The legislature chose to use two different phrases within the same paragraph, and we must assume they did so for a reason. *See Sauder v. Ferguson*, 289 Va. 449, 457-58 (2015) ("When the General Assembly uses two different terms in the same act, it is presumed to mean two different things." (quoting *Forst v. Rockingham Poultry Mktg. Coop.*, 222 Va. 270, 278

- 6 -

(1981))).  That the legislature intended two different meanings by these two different phrases is even more apparent in light of the legislative history of this statute.

Before it was amended in 1999, Code § 18.2-308.2(A) contained no mandatory minimum sentencing provisions.  It simply read:

> It shall be unlawful for (i) any person who has been convicted of a felony or (ii) any person under the age of twenty-nine who was found guilty as a juvenile fourteen years of age or older at the time of the offense of a delinquent act which would be a felony if committed by an adult, whether such conviction or adjudication occurred under the laws of this Commonwealth, or any other state, the District of Columbia, the United States or any territory thereof, to knowingly and intentionally possess or transport any firearm or to knowingly and intentionally carry about his person, hidden from common observation, any weapon described in § 18.2-308.  A violation of this section shall be punishable as a Class 6 felony.

The amendment in 1999 added mandatory minimum penalties that apply in certain cases.  A person who violates the statute after being "previously convicted of a violent felony as defined in § 17.1-805" is subject to a five-year mandatory minimum sentence.  This sentencing provision applies regardless of when the prior violent felony conviction took place.  In contrast, any person who violates the statute after being "previously convicted of any other felony within the prior 10 years" is subject to a two-year mandatory minimum sentence.[5]  In adding these provisions, which specifically apply to those with prior felony convictions, we must assume the legislature chose its words carefully and did not apply mandatory sentencing provisions to juveniles adjudicated of delinquent acts that would have been felonies if committed as an adult.

Our decision in *Carter* ignores the distinction in statutory language in favor of honoring what it perceives to be a general legislative intention to "prevent[] a person, who is known to have committed a serious crime in the past, from becoming dangerously armed, regardless of

---

[5] While the statute has been amended since 1999, the quoted penalty language remains the same.

whether that person uses, displays, or conceals the firearm." 38 Va. App. at 124 (alteration in original) (quoting *Thomas v. Commonwealth*, 37 Va. App. 748, 754 (2002)). Armed with this intention, *Carter* inflates the significance of the phrase "any person" in the statute as "clearly embrac[ing] anyone found in violation of the prohibition," *id.* at 125, while ignoring that "any person" modifies the phrase "previously convicted of any other felony."

The default rule instituted by the General Assembly is that juvenile adjudications do not "impose any of the civil disabilities ordinarily imposed by conviction for a crime." Code § 16.1-308. This is because "juvenile proceedings are corrective in nature rather than penal. . . . The primary function of the juvenile courts properly considered is not conviction or punishment for crime; but crime prevention and juvenile rehabilitation." *Kiracofe v. Commonwealth*, 198 Va. 833, 844 (1957). That elsewhere in the Code the General Assembly specifically stated that juvenile adjudications should be considered synonymous with felony convictions is the exception to this general principle, and not a reason to think the General Assembly intended the same result by implication alone in Code § 18.2-308.2(A). *See, e.g.*, Code §§ 17.1-805(B), 19.2-295.1.

For this reason, *Carter*'s suggestion that its interpretation is necessary to harmonize its treatment of juvenile adjudications with Code § 17.1-805's treatment of juvenile adjudications, 38 Va. App. at 125-26, is unpersuasive. Code § 17.1-805(A) directs the Sentencing Commission to adopt "discretionary felony sentencing guidelines" based on "computing the actual time-served distribution for similarly situated offenders, in terms of their conviction offense and prior criminal history." That statute includes directives on how the Commission should determine sentencing guideline midpoints for certain violent offenses, which must be enhanced if the offender "has previously been convicted of a violent felony offense." Code § 17.1-805. Within the limited context of repeat violent offenses, the General Assembly specified that

- 8 -

"previous convictions shall include prior adult convictions and juvenile convictions and adjudications of delinquency based on an offense which would have been at the time of conviction a felony if committed by an adult . . . ." Code § 17.2-805(B).

That the legislature specifically detailed the circumstances where prior juvenile adjudications should be treated as synonymous with adult felony convictions in other statutes[6] does not suggest that the legislature broadly intended to equate the two. In fact, in light of the general rule that juvenile adjudications are different, it suggests just the opposite. *See Conkling v. Commonwealth*, 45 Va. App. 518, 523-24 (2005) ("That an adjudication is treated as a conviction in specific circumstances implies that it is not so treated as a general rule.").

The Commonwealth defends the interpretation in *Carter* in part[7] by suggesting that we should infer that "the construction given to the statute is presumed to be sanctioned by the legislature" and that it is now "obligatory upon the courts," *Vansant & Gusler, Inc. v.*

---

[6] The other statute *Carter* points to is Code § 19.2-295.1, which merely requires the Commonwealth to present to a sentencing court "the defendant's prior criminal history, including prior convictions and the punishments imposed . . . including adult convictions and juvenile convictions and adjudications of delinquency." That the legislature wanted a sentencing court to know a defendant's full criminal history again does not suggest that the legislature wanted to impose mandatory minimum sentences for past juvenile adjudications, without expressly saying so.

[7] The Commonwealth also argues that Jennings conceded that his prior juvenile adjudication was a "conviction" by not objecting below when the prior adjudication was referred to as a "conviction." But the operative question in applying the mandatory sentencing provision in Code § 18.2-308.2(A) is not whether a person has a prior "conviction" or "adjudication" but whether someone has been "previously convicted of any other *felony*." Code § 18.2-308.2(A) (emphasis added). Jennings never conceded that he was convicted of a felony rather than a "delinquent act which would be a felony if committed by an adult." Jennings was 17-and-a-half at the time of the underlying offense. Code § 16.1-278.8 sets out the options a juvenile court has upon finding a juvenile delinquent. Because Jennings was 19 at the time of the final disposition, the juvenile and domestic relations judge had, and exercised, the option under Code § 16.1-278.8(15) to impose a penalty under Code § 16.1-284, which governs dispositions where an adult is sentenced for a juvenile offense.

- 9 -

*Washington*, 245 Va. 356, 361 (1993), because the legislature has not acted in the intervening years to alter the same. This notion is known as the legislative-acquiescence presumption.

As our Supreme Court has recognized, "[e]ven when properly applied" the "[legislative-acquiescence] presumption is weak." *Jones v. Phillips*, 299 Va. 285, 301 (2020). Indeed, it is "at best treacherous to find in congressional silence alone the adoption of a controlling rule of law." *United States v. Wells*, 519 U.S. 482, 496 (1997) (quoting *NLRB v. Plasterers'*, 404 U.S. 116, 129-30 (1971)). As a result, neither this Court, nor the Supreme Court, have applied this presumption where a prior statutory interpretation decision conflicts with the plain text of a statute. To do so would offend the basic notion that we apply the text as written and not by plucking legislative intent from a cloud of inferences about what the General Assembly might have later agreed with.

There are other competing presumptions and rules here that ultimately diminish any persuasive value the legislative-acquiescence presumption may otherwise hold. First, we presume that criminal sentencing requires vast discretion from trial judges. *Minh Duy Du v. Commonwealth*, 292 Va. 555, 563 (2016). Indeed, absent a claim of procedural unreasonableness based on "an alleged statutory or constitutional violation," a "trial court 'has a range of choice, and its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Id.* at 563-64 (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212-13 (2013)). Given the strong presumption that a trial court is "best able to discern where the equities lie," *Sauder*, 289 Va. at 459 (quoting *Hamad v. Hamad*, 61 Va. App. 593, 607 (2013)), we must narrowly construe statutes that require a trial judge to give up that discretion and impose a mandatory minimum sentence. Second, the rule of lenity requires us to resolve any statutory ambiguity in favor of the accused. *Blake v. Commonwealth*, 288 Va. 375, 386 (2014).

Given that the statute at issue here is, at best, ambiguous, the rule of lenity similarly mandates a narrowing construction.

For these reasons, our Court should revisit *Carter* en banc.